**HILLCREST PROPERTY, LLP,**

        **Plaintiff,**

v.                              **Case No. 8:10-cv-819-T-23TBM**

**PASCO COUNTY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

       THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a report and recommendation on **Pasco County's Motion for Summary Judgment** (Doc. 111) and Plaintiff's response (Doc. 117), and **Plaintiff's Dispositive Motion for Partial Summary Judgment as to Pasco County's Liability Under Counts VII, VIII, IX, XII, XIII, XV and XVI** (Doc. 112) and Defendant's response (Doc. 116).[1] The parties have filed affidavits, depositions, and other documentary evidence in support of their positions (Docs. 102-10, 113-14, 118-22, 124), as well as supplemental authority (Docs. 126-27, 151, 153, 159, 162, 166-67).[2] Oral arguments on the motions were conducted on December 15, 2011.

---

[1]Plaintiff has also filed a Request for Judicial Notice of Legislative History and Matters on Pasco County's Official Website (Doc. 150) and a Request for Judicial Notice of Ordinance 11-15 (Doc. 161). Copies of the Right-of-Way Corridor Preservation Ordinance No. 05-39, as amended by Ordinance No. 06-36, have been filed previously. (Docs. 39, 50). The Ordinance, as amended, is codified at section 319 of the Pasco County Land Development Code.

[2]Also before the court are **Plaintiff's Motion to Strike the Affidavit of David Goldstein** (Doc. 128) and Defendant's response in opposition (Doc. 133), and **Pasco**

For the reasons set forth herein, it is recommended that both motions be granted in part and denied in part.

I.

A.

Hillcrest Property, LLP ("Hillcrest") sues Pasco County, Florida ("the County"), claiming that the County's Comprehensive Plan, Right-of-Way Corridor Preservation Ordinance, and unwritten policies and customs with respect to exaction and/or dedication requirements run afoul of the United States Constitution and the Florida Constitution, both facially and as applied to Hillcrest. As the record reflects, a number of claims were resolved on a motion to dismiss. *See* (Docs. 91, 93). Remaining are six federal counts and nine state counts:

| | |
|---|---|
| Count I | as-applied claim for a permanent taking of private property in violation of the *Florida Constitution* |
| Count II | alternative as applied claim for a due process violation under the *United States Constitution* |
| Count III | alternative as applied claim for an equal protection violation under the *United States Constitution* |
| Count IV | alternative as applied claim for a due process violation under the *Florida Constitution* |

**County's Motion to Strike Noto's Appraisal Reports Dated August 24, 2011, and Supplemental Report Dated August 29, 2011, and to Preclude Noto from Testifying to Any Opinions Beyond Those Outlined in His Earlier Expert Reports and Deposition Testimony** (Doc. 134) and Plaintiff's response in opposition (Doc. 139). In connection with the court's consideration of these cross-motions for summary judgment, the motions are **DENIED**.

| | |
|---|---|
| Count V | alternative as applied claim for an equal protection violation under the *Florida Constitution* |
| Count VI | alternative as-applied claim for a temporary taking of private property in violation of the *Florida Constitution* |
| Count VII[3] | alternative facial due process claim under the *United States Constitution* |
| Count VIII | alternative facial equal protection claim under the *United States Constitution* |
| Count IX | alternative facial due process claim under the *Florida Constitution* |
| Count X | alternative facial equal protection claim under the *Florida Constitution* |
| Count XII | facial claim that the ordinance violates the access to courts guarantee under the *Florida Constitution* |
| Count XIII | facial AND as applied claims that the ordinance violates separation of powers under the *Florida Constitution* |
| Count XIV | facial claim that the ordinance violates the right to jury trial under the *Florida Constitution* |
| Count XV | facial claim that the ordinance violates the access to courts guarantee under the *United States Constitution* |
| Count XVI | facial claim that the ordinance violates the right to jury trial under the *United States Constitution* |

Hillcrest seeks a determination of a taking or at least a temporary taking and just compensation therefor. Alternatively, it seeks declaratory and injunctive relief and, where permitted, damages. Each of the as-applied claims arise from the alleged imposition of a

---

[3]Counts VII through X allege violations by reason of specified provisions in the County's Comprehensive Plan, the Right-of-Way Corridor Preservation Ordinance, and alleged unwritten exaction policies and customs.

right-of-way exaction by the County. The facial claims each assert a constitutional violation by reason of the County's Comprehensive Plan Policy FLU 1.1.5, Table 7-42, Map 7-35, Map 7-36, the County's Right-of-Way Preservation Ordinance, and the County's unwritten exaction customs and policies.

B.

Here, Hillcrest seeks partial summary judgment on its facial challenges that portions of the Pasco County Comprehensive Plan, its Right-of-Way Preservation Ordinance ("the Ordinance"), and its unwritten customs, policies, and practices violate the takings, due process, and equal protection clauses of the Fifth and Fourteenth Amendments (Counts VII and VIII) and the takings and due process clauses of the Florida Constitution (Count IX). It also seeks partial summary judgment on its facial challenges that Sections 319.9 and 319.10 of the Ordinance violate the constitutional guarantees of access to courts under the Florida and United States Constitutions (Counts XII and XV), the doctrine of separation of powers under the Florida Constitution (Count XIII); and the right to trial by jury under the Florida and United States Constitutions (Counts XIV and XVI). In short, in connection with a development application and construction permit, Hillcrest was required to dedicate a portion of its property fronting State Road 52 ("SR 52")to the County free of charge. While contending that such constitutes a "taking," it alternatively argues that the land-use scheme itself is facially unconstitutional. The following from Hillcrest's brief neatly sums up its argument:

> Unquestionably, if Pasco County simply adopts an ordinance requiring all landowners whose properties front the major road network to dedicate right-of-way upon demand at no cost to the

4

County, the ordinance would violate the due process, equal protection and takings clauses. The question for this Court is whether the County's Right-of-Way Corridor Preservation Ordinance's requirement that such dedication be made as a condition of development plan approval changes that result. It does not for the simple reason that the dedication requirement is completely untethered from the traffic impact of the proposed development. The Ordinance requires dedication regardless of the magnitude of a proposed development's traffic impact and without the County having made any individualized determination that the dedication is related in nature and scope to the traffic impact of the proposed development. Dedication is required simply because a landowner happens to own property within a corridor and applies for development approval. The Ordinance effectively forces landowners seeking development approval to choose between that approval and the right to be compensated for the taking of their property.

The Ordinance purports to "cure" its obvious constitutional infirmity by providing landowners, who believe a dedication requirement is not "roughly proportionate" to the traffic impact of their proposed development, an administrative remedy known as a "dedication waiver," pursuant to which the landowner can seek "compensation" from the County. This so-called "remedy" is unfair, costly, time consuming and unduly burdensome. It's remedial protections are illusory and reveal the remedy as nothing more than a regulatory artifice whose so-called "cure" is in fact worse than the Ordinance's constitutional "disease." Simply put, the Ordinance is an outright plan of extortion, attempting to masquerade as a legitimate exercise of the police power. It is a thinly veiled attempt to take private property while evading the substantive and procedural safeguard afforded private property ownership.

(Doc. 112 at 1-2).

The County seeks summary judgment on Hillcrest's six federal claims and requests

the court to refuse to exercise supplemental jurisdiction over the remaining state claims. It

asserts that the as-applied due process and equal protection claims (Counts II and III) are not

ripe and, in any event, fail on the merits. It asserts further that the facial due process (Count

VII) and equal protection (Count VIII) claims, as well as the facial challenges based on the right to access to the courts (Count XV) and the right to jury trial (Count XVI), all fail because Hillcrest cannot meet the heavy burden of showing that the County's Ordinance can never be applied in a constitutional manner. If any federal claim survives and/or the court decides to exercise it supplemental jurisdiction, the County urges that the state law as-applied claims for a permanent and temporary taking and for violations of due process, equal protection, and separation of powers (Counts I, IV, V, VI, and XIII) are not ripe. Further, it contends that principles of acquiescence, consent, no objection, waiver, contract, and/or estoppel bar the claims in Counts I-VI. As for the state law equal protection claims (Counts V and X), it urges that the state constitutional guarantee applies only to natural persons and not entities such as an LLP. Lastly, it urges that the facial state law claims for due process (Count IX), equal protection (Count X), access to courts (Counts XII), separation of powers (Count XIII), and right to trial by jury (Count XIV) all fail on the merits.

## C.

Summary judgment or partial summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the pleadings, depositions, and/or other evidence that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to designate specific facts, beyond mere allegations,

demonstrating a genuine issue of material fact to avoid summary judgment. *Celotex Corp.*, 477 U.S. at 324; *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994); *Perkins v. Sch. Bd. of Pinellas Cnty.*, 902 F. Supp. 1503, 1505 (M.D. Fla. 1995).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

## II.

The undisputed facts establish that Hillcrest is the record owner of sixteen and a half acres of undeveloped, commercially zoned land located on the northwest quadrant of the intersection of SR 52 and Old Pasco Road in Pasco County, Florida. George Karpay is the president of Hillcrest. Dale Lewis is the vice president. In excess of fourteen-hundred feet of this parcel front on SR 52. The property was part of a much larger parcel that was rezoned to a Master Planned Unit Development in 2000. Approval of that rezoning was conditioned on the landowner deeding a ten-foot wide strip of land bordering SR 52 to increase its right-of-

way. Hillcrest purchased its parcel in 2001. As set forth below, Hillcrest eventually sought to develop a retail shopping center with out parcels on this property.

Pasco County's Comprehensive Plan includes a Future Land Use ("FLU") Element and a Transportation ("TRA") Element by which the County has identified and established future right-of-way corridors and created policies for the preservation and management of transportation corridors. Maps and tables created thereunder are used as the basis for acquisition and dedication of right-of-ways and for review of all development proposals and subdivision plats. The FLU policy in effect at all pertinent times prescribed that, "all new development supports the appropriate development of roads needed for county growth by requiring all development to comply with the Right-of-Way Preservation Ordinance." *See* (Doc. 36-2 through 36-6). In November 2005, the County amended its Land Development Code ("LDC") by adopting the "Pasco County Right-of-Way Preservation Ordinance" ("the Ordinance"). *See* (Doc. 39). By its terms, adoption of the Ordinance was intended to implement the goals and objectives of the County's Comprehensive Plan, including policies and objectives of the TRA Element and policies and objectives of the FLU Element of the Plan. Among the Ordinance's premises was the need to protect future traffic corridors and right-of-ways from permanent encroachment to assure availability consistent with the County's long-range development plans. *Id.* at 31. The Ordinance defined "Transportation Corridor" to include land used as a street and shown on the County's Comprehensive Plan Transportation Element Transportation Corridor Preservation Map and Table. One such Transportation Corridor was SR 52 between CR 581 and Old Pasco Road. Additionally, the Ordinance sought to "establish procedures for developers to request waivers of, or

8

compensation for, right-of-way dedications . . . where such requirements are not roughly proportional to the transportation impacts of the proposed development." *Id*. at 32

Pertinent to this suit, the Ordinance established new procedures for the submission and review of Class II development site plans. *See* (Doc. 39 at 33-39). It also created a new Article 319 entitled Transportation Corridor Management. *See id.* at 44-59. By its terms, Article 319 is "intended to coordinate the full development of roads within transportation corridors and the planning of future transportation corridors and roads with land use planning within and adjacent to the corridors to promote orderly growth to meet concurrency requirements and to maintain the integrity of the corridor for transportation purposes." *Id.* at 44. Purportedly, the adoption of Article 319 was "necessary in order to preserve, protect and provide for the dedication and/or acquisition of right-of-way and transportation corridors that are necessary to provide future transportation facilities and facility improvements to meet the needs of growth projected in the County comprehensive plan and to coordinate land use and transportation planning." *Id.* at 45. Ostensibly, the Ordinance is intended to "foster and preserve public health, safety, comfort, and welfare and to aid in the harmonious, orderly, and beneficial development of the County in accordance with the Comprehensive Plan. *Id*. To that end, it imposes "special development regulations and procedures on all land located within Transportation Corridors . . ." and applies "to all development on land where any portion of the development site is within the jurisdiction of the County and shown on the County Transportation Corridor Preservation Map and table." *Id* at 45-46.

Section 319.8 of the Ordinance provides that "as a condition of approval" of a development permit/order, all applicants for the same, "where any portion of the development

site is located within a Transportation Corridor, shall enter into an agreement with the County, . . . which shall provide for the dedication to the County of lands within the development site . . . which are within the Transportation Corridor," subject to a dedication waiver under Section 319.9.B.  *Id*. at 52.  Further, "where the property owner believes that the amount of land required to be dedicated exceeds the amount of land that is roughly proportional to the transportation impacts to be generated by the proposed development site . . ., the landowner shall be entitled to apply for a Dedication Waiver . . . ."  *Id*. at 53.  This provision further provides that where development of the pertinent Transportation Corridor is not shown in the County's five-year Capital Improvement Plan or Element or the Florida Department of Transportation's five-year Transportation Improvement Program, and development of the road in the Transportation Corridor is not necessary to mitigate the transportation impacts of the proposed development, the landowner is entitled to interim use of the property consistent with Section 319.6 of the Ordinance.  *Id.*

The County's Development Review Committee ("DRC") is the sole decision-maker on applications for development permits such as the one sought by Hillcrest.  The DRC has the authority to approve preliminary site plans, place conditions on such approval, and to exact right-of-ways.

In December 2006, Hillcrest submitted to the County staff its first preliminary site plan ("PSP") to develop the property with a retail shopping center with commercial outparcels.  The PSP did not reflect the Transportation Corridor or any dedication of land bordering SR 52.  In or about February 2006, Hillcrest was notified by County staff that the PSP needed to be revised.  The notice included that, per the Transportation Corridor

Preservation Map, Hillcrest had to convey, at no cost to the County, 110 feet from the centerline of SR 52. It was directed to show the centerline and corridor and to complete any corridor variance studies under the Ordinance prior to resubmittal of the PSP.

In March 2007, Hillcrest submitted a revised PSP that showed the corridor preservation line extending 110 feet from the centerline of SR 52. In May 2007, County staff notified Hillcrest that it should revise the PSP to show a 150 foot right-of-way to accommodate a new study by the Florida Department of Transportation ("FDOT"), which indicated that SR 52, when expanded, would expand 140 feet to the north on various properties including Hillcrest's. Hillcrest was directed to remove any improvements from within this area and again complete any corridor variance studies under the Ordinance prior to resubmittal.

In July 2007, Hillcrest submitted its second revised PSP identifying the 220-foot Pasco Transportation Corridor and the FDOT right-of-way and removing all improvements from a 140-foot clear zone dictated by the FDOT study.[4] Hillcrest expressly indicated in its submission that its redesign did not represent its willingness to provide such right-of-way without compensation or that the condition requiring such right-of-way donation would not be challenged if an agreement on the acquisition could not be reached. County staff thereafter drafted right-of-way conditions of approval and recommended approval of the PSP by the

---

[4]Hillcrest proffers that it had communications with the FDOT and the County during March and April 2007 that ultimately led to the County insisting that the site plan not reflect any improvements within a 140-foot clear zone to accommodate the FDOT proposed right-of-way.

DRC. Among the conditions of approval was one requiring that Hillcrest convey, at no cost to the County, 110 feet of right-of-way from the centerline of SR 52.

On August 23, 2007, the DRC met to consider the PSP. By the County's claim, Hillcrest evidenced no objection to, and in fact agreed to, the conditions of approval including the dedication based on a 110-foot right-of-way at no cost to the County. By way of Mr. Karpay's testimony, Hillcrest asserts that it participated in the meeting with the understanding that it would be compensated based on the dedication of the 140-foot clear zone. In any event, the revised PSP was approved by the DRC.

In October 2007, County staff submitted a revised Development Order to Hillcrest for review and signing. Among the conditions of approval again noted was the condition that, "subject to the provisions of the Right-of-Way Preservation Ordinance, the developer shall convey at no cost to Pasco County 110 feet of right-of-way from the centerline of SR 52 . . ." (Doc. 114-7). The order also notified Hillcrest that if it objected to any condition of approval, a written notice of rebuttal or request for administrative appeal should be submitted within 30 days. *Id.* On October 18, 2007, Mr. Karpay signed Hillcrest's acknowledgment to the Development Order without indicating any protest or reservation.

Hillcrest submitted its first set of construction plans for approval in September 2007. After several denials, the construction plan was finally approved by the County in June 2008. The approval contained a condition that stated, "subject to the right-of-way preservation ordinance, the developer shall convey at no cost to [the County] 140 feet from the centerline of S.R. 52. . . ." The County claims the reference to the dedication of 140 feet was in error and unenforceable in any event given that only the DRC could order an exaction. Hillcrest

12

maintains that there was no error as the County had consistently demanded it convey the 140-foot clear space necessary under the FDOT study.[5]  It urges that any claim of mistake should be submitted to the jury.

The parties engaged in numerous discussions, obtained appraisals, and exchanged offers in an effort to resolve the matter of compensating Hillcrest for its dedication or set aside of land.  The negotiations were unsuccessful.

At no time did Hillcrest pursue a variance or dedication waiver under the Ordinance; nor did it seek an administrative appeal under the Ordinance or Florida law.  As set forth above, the Ordinance has provisions for a dedication waiver and for waiver/variances. Regarding dedication waivers, the Ordinance provides in pertinent part:

> Where the property owner believes that the amount of land required to be dedicated to the County under the provisions of Section 319.8 exceeds the amount of land that is roughly proportional to the transportation impacts of the proposed development site . . . , the property owner may apply to the Development Review Committee for a Dedication Waiver. . . .

Section 319.9.A.  *See* (Doc. 39 at 53-54).  The rather considerable requirements on the landowner for submission of an application for a dedication waiver are set forth in detail in Section 319.9.B.  Thus, in the absence of a hardship waiver, the application for dedication waiver requires, among other submissions, appraisals and a detailed traffic impact study all at the landowners expense.  Under Section 319.C., upon such application and where the DRC determines that any portion of the land required to be dedicated exceeds the amount of land

---

[5]Suffice it to say that the parties disagree on the extent of the dedication required as a condition to the development approval and permit.

that is roughly proportional to the transportation impacts of the proposed development site . . ., the DRC may either authorize compensation or deny compensation in accordance with other terms in this Section. *Id.* at 56. Compensation for the dedication may be made by monetary payment to the landowner, by providing transportation impact fee credits, by designing and/or constructing the site's transportation improvements of equivalent value, or by some combination of these remedies. Section 319.9.D, *Id.* at 56-57. If no compensation is authorized by the DRC, the property owner is not required to dedicate any land and may use the sites subject to applicable provisions of the LDC and Compensation Plan. Section 319.9.E., *Id.* at 57. Under Section 319.9.F.2., the procedures for dedication waiver "must be exhausted prior to filing any civil claim, action or request challenging, or seeking compensation for, a dedication required by 319.8 or other Transportation Requirement." *Id.* at 58. "[T]he procedures set forth in 319.9 shall be the County's exclusive administrative remedy for challenging a dedication required by 319.8 or other Transportation Requirement as not being roughly proportional to the transportation impacts of a development." Section 319.10, *Id.* at 58.

Hillcrest maintained that the dedication requirement resulted in an unconstitutional taking of its property and that it should be compensated for the 140-foot clear space it is required to dedicate to the County in exchange for its development permit/order. When the parties failed to resolve the dispute over compensation, this suit was filed.[6]

---

[6]From arguments, it appears that Hillcrest also now has pending an inverse condemnation claim against the FDOT for its alleged taking of a portion of Hillcrest's property.

14

III.

Because I conclude that Sections 319.8 and 319.10 of the Ordinance facially violate due process under both the federal and state constitutions and that Hillcrest is entitled to relief as a matter of law, I address only Counts VII and IX in detail.

As alternatives to its takings claims, Hillcrest seeks to invalidate and enjoin enforcement of the Comprehensive Plan Policy FLU 1.1.5, Table 7-42, Map 7-35, Map 7-36, the Ordinance, and the County's unwritten exaction customs, policies, and practices because such deprive Pasco County landowners of property without due process of law. Thus, in Count VII, Hillcrest urges violation of the Due Process Clause of the Fifth and Fourteenth Amendments because the County's land use and development scheme authorizes, indeed compels, imposition of right-of-way dedication and set-aside requirements on landowners as a condition to development of their property that are not reasonably related in nature and extent to the traffic impacts of the proposed development and, in doing so, shifts to the landowner the County's constitutionally mandated burden to demonstrate that the dedication or set-aside is related both in nature and extent to the traffic impact of the proposed development. As argued by Hillcrest, the County has created an unconstitutional scheme or mechanism by which it circumvents constitutional and statutory protections afforded private property owners to the extent that it may take property without just compensation. The argument under federal law is largely dependent on the Supreme Court's decisions in *Nollan v. California Coastal*

*Commission,* 483 U.S. 825 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374 (1994).  (Doc. 112 at 16-25).[7]

In Count IX, brought under the Florida Constitution, Article I, sections 2 and 9, and Article X, section 6,[8] the argument is much the same and supported by a Florida Supreme Court decision striking down an analogous statutory scheme as violative of due process because it sanctioned the taking and land-banking of private property by avoiding the protections afforded landowners under Florida's eminent domain laws.[9]  (Doc. 112 at 12-16).

By its cross-motion and in response, the County argues that the facial challenge in Count VII is barred by the statute of limitations,[10] and, in any event, is not ripe because Hillcrest failed to pursue compensation in state court.[11]  Further, to the extent that this

_____

[7]At Count VIII, Hillcrest urges that this overreaching regulatory scheme, on its face, similarly violates the Equal Protection Clause to the United States Constitution because it permits the County to place a disproportionate burden on landowners whose property lies within a Transportation Corridor.  In Count X, the same claim is raised pursuant to the Florida Constitution.  Hillcrest does not seek summary judgment on Count X.  It appears that claim is without merit under Florida law, which holds that Article I, section 2 of the Florida Constitution is limited by its terms to "natural person."  *See e.g. Fla. Real Estate Comm'n v. McGregor,* 336 So.2d 1156, 1160 n. 5 (Fla. 1976).

[8]Article I, section 2 provides that, "[a]ll natural persons, . . . , are equal before the law and have inalienable rights, among which are the right to . . . , acquire , possess, and protect property; . . . ."  Section 9 provides that, "[n]o person shall be deprived of life, liberty or property without due process of law, . . ."  Article X, section 6 provides that, "[n]o private property shall be taken except for a public purpose and with full compensation thereof . . ."

[9]*See Joint Ventures, Inc. v. Dep't of Transp.,* 563 So. 2d 622 (Fla. 1990).  Plaintiff also cites *Lee County v. New Testament Baptist Church of Ft. Myers, Florida, Inc.,* 507 So.2d 626 (Fla. Dist Ct. App. 1987).

[10]*See* collected cases at (Doc. 116 at 4 n.4 and n.5).

[11]Here, the County cites cases from several circuits which hold that the *Williamson* just compensation prong applies both to takings claims and to due-process claims that are

16

purports to be a substantive due process *takings* claim, it urges that no such claim exists in the Eleventh Circuit.[12]  Similarly, it argues that there is not an arbitrary and capricious due process claim in this circuit for claims based on state-created rights such as property rights.[13]  Finally, the County urges that *Nollan* and *Dolan* are inapposite to the claim in Count VII (and VIII) and the facial challenge fails because its plan for future roadway development is a legitimate government purpose and its means of preserving the right-of-way thereunder are appropriate to satisfy the rational basis test applicable to such claims.[14]  (Docs. 111 at 29-30, 116 at 10-12).

As for the state law claim in Count IX, in its motion the County urges that Hillcrest cannot meet the high burden of a facial challenge to establish that the scheme is invalid beyond a reasonable doubt and unconstitutional under every conceivable basis.[15]  In its response to Hillcrest's motion, the County argues that the facial challenges to the Ordinance are barred by the statute of limitations.  In any event, it argues that Hillcrest does not demonstrate, consistent with Florida law, that the Ordinance is not reasonably related to a

_____

related to, or concomitant with, the facial takings claim.  *See* (Doc. 111 at 29 n. 38 and Doc. 116 at 11 n. 14).

[12]Citing *Villas of Lake Jackson, Ltd. v. Leon County,* 121 F.3d 610, 612 (11th Cir. 1997).

[13]Citing *Busse v. Lee County, Florida*, No. 08-13170, 2009 WL 549782 (11th Cir. 2009).

[14]Citing *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822 (11th Cir. 1998); also collected cases at (Doc. 116 at 11 n.15).

[15]*See* collected cases at (Doc. 111 at 38).

permissible legislative purpose and is arbitrary or oppressive.[16]  It also argues that Hillcrest cannot otherwise meet the heavy burden of showing the Ordinance unconstitutional in all its application.  (Doc. 116 at 18-19).

Facial challenges assert that "a law 'always operates unconstitutionally.'"  *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quoting Black's Law Dictionary at 223 (7th ed.1999)).  "In contrast with an as-applied challenge, '[a] facial challenge . . . seeks to invalidate a statute or regulation itself.'"  *Doe v. Fla. Bar*, 630 F.3d 1336, 1341-42 (11th Cir. 2011) (quoting *United States v. Frandsen,* 212 F.3d 1231, 1235 (11th Cir. 2000)).  Consequently, only if the statute "could never be applied in a constitutional manner" will a facial challenge succeed.  *DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1262 (11th Cir. 2007) (citing *Jacobs v. The Fla. Bar*, 50 F.3d 901, 906 n.20 (1995)).  A plaintiff mounting a facial challenge bears the burden of proving that the law could never be applied in a constitutional manner.  *Id.*

As an initial matter, I find that Hillcrest's facial due process challenges to the County's land use and development scheme are distinct and separate claims from the takings claims.  In pertinent part, the Fifth Amendment includes two distinct clauses, both at play in this suit.  First, along with the Fourteenth Amendment, it provides that no person shall "be deprived of life, liberty, or property, without due process of law."  Second, it prescribes, "nor

---

[16]The County cites *Warren v. State Farm Mut. Auto. Ins. Co.,* 899 So.2d 1090, 1096 (Fla. 2005) and *Lasky v. State Farm Ins. Co.*, 296 So.2d 9, 15 (Fla. 1974) ("the test to determine whether a statute violates due process 'is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive.").

shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Each clause serves a distinct purpose. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005). While the Due Process Clause serves to protect an individual against arbitrary or irrational government action directed toward his person or property, the Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* at 537 (emphasis in original) (quoting *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 315 (1987)). Even in the absence of a taking, a regulation directed toward property may be so arbitrary or irrational as to violate due process. *Id*. at 548 (Kennedy concurring) (citing *E. Enters. v. Apfel*, 524 U.S. 498, 539 (1998)).

As fashioned by Hillcrest, these counts are brought not to obtain compensation for the exaction but to strike down an allegedly unconstitutional land-use scheme that arbitrarily and without a rational basis allows for the outright taking and/or land banking of property without compensation. By my consideration, these claims are distinct from those seeking compensation for any taking that has occurred and are ripe for the court's consideration regardless of the *Williamson County* requirement that compensation first be pursued. *See Restigouche, Inc., v. Town of Jupiter,* 59 F.3d 1208, 1212 (11th Cir. 1995*); Exec. 100, Inc. v. Martin Cnty.,* 922 F.2d 1536, 1541 (11th Cir. 1991); *Eide v. Sarasota Cnty.*, 908 F.2d 716, 725 n. 16 (1990); *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997). While these cases each address an as-applied challenge, I find no reason to employ a different rule in regards to the facial challenges.

As for the County's claim that each facial challenge is barred by a four-year statute of limitations, it maintains that the facial claims accrued and the statute of limitations began to run when the Ordinance was enacted.[17] The County notes that the Ordinance was adopted on November 20, 2005, and suit was filed April 7, 2010, outside of the four year limitations period. Further, the County argues that Hillcrest may not claim any equitable tolling of the statute as it was not mislead or lulled into inaction in this matter.[18]

In response, Hillcrest urges that an ordinance repugnant to the Constitution is void and of no effect and therefore at least until it is actually applied, no cause of action can accrue. Thus, it notes that in the case of a facial takings claim seeking compensation which presupposes the validity of the enactment, the statute of limitations runs from the date of enactment because that is when the cause of action (the taking) actually occurs. (Doc. 112 at 3, n. 1). However, Hillcrest urges that facial claims challenging the underlying constitutionality are different because the cause of action does not accrue until the unconstitutional statute is actually applied in a particular case. *Id*. In support, Hillcrest cites *Gillmor v. Summit County*, 246 P.3d 102 (Utah 2010); Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L. Rev. 51 (2010). On this basis, since the Ordinance was first applied to to Hillcrest's property in February 2007 and suit was brought in April 2010, the four-year statute of limitations does not bar the claims. It further urges that here, the parties

---

[17]Among other cases, the County cites *Florida Keys Citizens Coalition v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998); *Beyer v. Marathon*, 37 So.3d 932 (Fla. Dist. Ct. App. 2010); and *Collins v. Monroe County*, 999 So.2d 709 (Fla. Dist. Ct. App. 2008).

[18]The County cites *Environmental Resource Associates of Florida, Inc., v. Florida Department of General Services*, 624 So.2d 330 (Fla. Dist. Ct. App. 1993).

engaged in protracted discussions concerning the acquisition of the right-of-way which

mislead and lulled Hillcrest into inaction and thus a tolling would be appropriate in any event.

Constitutional claims brought under § 1983 are subject to the statute of limitations

governing personal injuries in the state where the claims have been brought. *Owens v. Okure*,

488 U.S. 235, 239-41 (1989); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In

Florida this is four years. *City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir.

2002); Fla. Stat. § 95.11(3)(a). The issue of tolling is also governed by state law. *Mullinax v.

McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). However, the accrual date of a cause of

action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Mullinax*, 817

F.2 Fd at 716. A cause of action under § 1983 generally does not accrue until the plaintiff

knows or should know of the injury that forms the basis for the claim and the identify of the

person who inflicted it. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

As noted by the parties, there is a debate over when the limitations period accrues for

a facial due process challenge. Neither position is without some merit. On the instant

motions, however, the court need not decide this issue given Hillcrest's claim for equitable

tolling.[19] Here, I am obliged to again find that this defense may not be resolved as a matter of

law given the circumstances of the case which indicate that, over an extended period of time,

the County negotiated with Hillcrest concerning the matter of compensating Hillcrest for the

---

[19]As noted by the County, the Ordinance was approved on November 22, 2005, and took effect within ten days thereafter upon the filing of the same with the Department of State. (Doc. 39 at 63). Thus, absent a basis to toll the limitations period, Hillcrest had until November or December 2009 to file suit.

property exacted as a condition of the development.[20]  While the County apparently withdrew its offer of compensation because of a purported lack of funds,[21] the circumstances, in a light favorable to Hillcrest, permit it to claim that it was lulled or was misled into inaction.[22]  As the County admits in its response, equitable tolling is particularly ill-suited for resolution on summary judgment because it is generally a fact question.  *See* (Doc. 116 at 5).  At a minimum, there exists a question of fact on the issue of equitable tolling.

As for the County's argument that there is no longer a substantive due process *takings* claim or a substantive due process claim under Eleventh Circuit law, it is partially correct.  Thus, this Circuit no longer recognizes a substantive due process takings claim.  *See Villas of Lake Jackson*, 121 F.3d at 612.  However, as for substantive due process challenges of this sort, the County otherwise overstates the law.  While it is correct that substantive rights created only by state law are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution,[23]

_____

[20]Hillcrest proffers testimony that negotiations ran through December 2009.  *See* Third Aff. Lewis (Doc. 105).  Hillcrest filed this suit four months later.

[21]*See* Third Aff. Lewis (Doc. 105-1, ¶ 13).

[22]Under Florida law, "[t]he doctrine of equitable tolling has generally been applied in three circumstances: (1) when a party 'has been misled or lulled into inaction,' (2) when a party 'has in some extraordinary way been prevented from asserting his rights,' or (3) when a party 'has timely asserted his rights mistakenly in the wrong forum.'"  *Riverwood Nursing Ctr., LLC v. Agency For Health Care Admin.*, 58 So.3d 907, 910 (Fla. Dist. Ct. App. 2011) (quoting *Machules v. Dep't of Admin.*, 523 So.2d 1132 (Fla. 1988)).

[23]Substantive due process is only available as a remedy to protect those rights that are "fundamental," that is, those rights "implicit in the concept of ordered liberty" and created by the United States Constitution and not state granted and defined property rights.  *See Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (quoting *McKinney*, 20 F.3d at 1550).  Here, Hillcrest urges that the land-use scheme here

where an individual's state-created rights are infringed by a "legislative act," the substantive component of the Due Process Clause protects him from arbitrary and irrational action of the government. *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) (citing *McKinney,* 20 F.3d at 1557 n. 9).[24] Since the adoption of this Ordinance to implement the land-use and traffic plans and policies in accordance with the County's Comprehensive Plan is an act of broad-ranging regulation applicable to all landowners and developers within the County, it appears a legislative rather than executive act. Thus, whether the rights at stake are "fundamental" or merely state-created, a substantive due process challenge to the Ordinance is still available to Hillcrest.

On my determination that the facial due process claim is a separate and distinct claim independent of the takings claims, I also reject the County's argument that the facial challenge is not ripe because it is "ancillary to," "related to," "dependent upon," "coextensive with," or "resting upon the same factual foundation" as the takings claims and because Plaintiff did not pursue the administrative remedies under the Ordinance (which are the subject of the facial attack) or an action for compensation in state court (which is alleged in

_____

challenged implicates the Takings Clause of the Fifth Amendment and thus a fundamental right is at stake. The County cites case law which holds that property interests created or defined not by the Constitution but rather by some independent source such as state law, including those related to land-use regulation, are not fundamental.

[24]In this context, "legislative" acts "generally apply to a larger segment of - if not all of society; laws and broad-ranging executive regulations are the most common examples." *McKinney*, 20 F.3d at 1557 n.9. "Where an individual's state-created rights are infringed by "legislative act," the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government." *Lewis*. 409 F.3d at 1273 (citing *McKinney*, 20 F.3d at 1557 n.9).

Count I). (Doc. 111 at 14-18, 29). The claim that the Ordinance is an invalid exercise of the police power, arbitrary, capricious, and oppressive, is one that ripened upon the adoption of the Ordinance. *See Hillcrest Property, LLP v. Pasco Cnty.*, 731 F. Supp. 2d 1288, 1295 (M.D. Fla. 2010). I find no basis to revisit that ruling on these motions.

Before addressing the merits of Hillcrest's due process argument, there remains the question of the applicable standard. Hillcrest proposes some vaguely specified heightened standard of review because the land-use scheme at issue implicates its fundamental right to just compensation for the taking of its property. The argument relies heavily on the decisions in *Nollan* and *Dolan*. At a minimum, Hillcrest argues that the due process analysis is at least informed by the Supreme Court's decisions in *Nollan* and *Dolan*, if not controlled by the same.[25] The County urges that *Nollan* and *Dolan* are inapplicable and that the matter is governed by the traditional rational basis standard found applicable by a number of courts to

---

[25]In *Nollan* and *Dolan,* the Supreme Court considered whether the state could constitutionally require landowners to convey easements across their property as a condition to granting development permits. In *Nollan,* the Supreme Court held that the California Costal Commission could not condition a building permit on the granting of a public easement across the Nollan's beachfront property because there was no "essential nexus" between the legitimate state interest (defined by the city as maintaining the public's visual access to the ocean) and the condition imposed (requiring lateral public access across a private lot). 483 U.S. at 837. In *Dolan,* the Supreme Court held that, while an "essential nexus" existed between the legitimate state interest (flood and traffic control) and the condition imposed (the dedication of property for flood control and a pedestrian/bicycle path), the exaction nevertheless failed to pass constitutional muster because there was no "rough proportionality" between the condition and the projected impact of the proposed development. 512 U.S. at 391. Thus, under *Nollan* and *Dolan*, a two-part test is used when analyzing the constitutionality of a land-use condition imposed by executive action: (1) is there an "essential nexus" between the condition imposed and a legitimate government purpose? and, if so, (2) is there a "rough proportionality" between the required dedication and the impact of the proposed development such that they are related both in nature and extent.

land-use disputes. Absent finding any case law to support a heightened scrutiny standard in the area of land-use regulation, I am obliged to conclude that the matter is governed by the rational basis analysis urged by the County. *See Eide,* 908 F.2d at 721 (citations omitted); *see also Bannum, Inc.,* 157 F.3d at 822 (providing that where the ordinance neither targets a protected class nor implicates fundamental right, the rational basis test applies to equal protection and due process claims.) While *Nollan* and *Dolan* do not set forth the applicable standard, I agree with Hillcrest that they do help inform the due process analysis.[26]

"[A] plaintiff may argue that the regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals or general welfare, and is therefore an invalid exercise of the police power." *Eide*, 908 F.2d at 721 (citations omitted). Whether the claim is viewed as a substantive challenge or a procedural challenge the general analysis is the same:

> When courts analyze a procedural due process claim or its analytically related cousin -substantive due process (it arises when a government egregiously or arbitrarily deprives one of his property) - they variously examine three things: (1) whether there is enough of a property interest at stake to be deemed protectable, (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation.

*Greenbriar Village, L.L.C.,* 345 F.3d at 1264 (citations and quotations omitted). Here, it is not seriously disputed that the landowners affected by this Ordinance have a protectable interest in their private property, and on its face, the Ordinance provides a process by which

---

[26]This should hardly be contested by the County as the Ordinance itself is so informed and pays lip-service to the standard set forth by *Nollan* and *Dolan* and Florida's own "dual rational nexus test."

the landowner may challenge the deprivation.  What is claimed is that dedication scheme legislated by sections 319.8 and 319.10 of the Ordinance are an abuse of government power by whatever label: arbitrary, capricious or oppressive.  I agree.

Under the rational basis test, which applies equally to due process and equal protection challenges, the County must prevail if the Ordinance is rationally related to some legitimate government purpose.[27]  *See Bannum, Inc*., 157 F.3d at 822.  On its face, the Ordinance, which purports to implement the County's plan for preservation and maintenance of its Transportation Corridors to accommodate future land-use and traffic needs, would appear to satisfy the first prong of the standard.  However, by my consideration, the means adopted by the County to accomplish the goal are an abuse of the County's police powers and an affront to the Fifth and Fourteenth Amendments of the United States Constitution and Article X, section 6 of the Florida Constitution.  In every instance brought within the purview of sections 319.8 and 319.10 of the Ordinance, landowners are compelled to surrender private property without compensation as a condition of development approval or permitting.  The dedication provision is no mere regulation of land use but rather a calculated measure by the County to avoid the burdens and costs of eminent domain and take private property without

---

[27]The rational basis test involves a two-prong inquiry: the first step is to identify a legitimate government purpose or goal which the County could have been pursuing; the second step asks whether a rational basis exists for the County to believe that the Ordinance would conceivably further the purpose.  *See Ga. Manufactured Hous. Ass'n, Inc. v. Spalding Cnty. Ga.,* 148 F.3d 1304, 1307 (11th Cir. 1998) (citing *Haves v. City of Miami*, 52 F.3d 918, 921-22 (11th Cir. 1995)).

just compensation.[28]  As constructed, the dedication requirement permits the County to leverage its police powers to extract private property without any individualized consideration of need and wholly without consideration of the matter of compensation when such works a taking.  As in *Joint Ventures*, the scheme impermissibly tilts the playing field in favor of the County to the end that the County has saved millions of dollars since the scheme was implement.  (Doc. 112-2 at 3, ¶ 1).

The Fifth Amendment exists to prevent the government from "forcing some people alone to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Nollan*, 483 U.S. at 835 n. 4 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960).  To avoid such unfairness and injustice, the Fifth and Fourteenth Amendments (as well as Article X, section 6 of the Florida Constitution) dictate that the government compensate landowners when it confiscates private property for public use under the power of eminent domain and when it regulates private property under its police power in a manner that effectively deprives the owner of the economically viable use of his property.  Here, the County has purposefully devised a land-use scheme which sanctions, indeed commands, in all instances within its purview and without individualized consideration, the dedication of such private property without compensation as a condition of development approval or permit.  In doing so, the Ordinance commands that ceratin landowners be forced "to bear the public burdens which, in all fairness and justice, should be borne by the public as

---

[28]Insofar as Hillcrest broadly asserts the unconstitutionality of those certain elements of the County's Comprehensive Plan identified in the Amended Complaint and the maps and tables associated therewith that identify the corridors and otherwise set forth its policies in regards to the same, the due process and equal protection challenges are without merit.

a whole," the very thing the Takings Clause of the United States Constitution and the equivalent provision of the Florida Constitution are intended to prevent. By my consideration, such a scheme, being inconsistent with the Fifth and Fourteenth Amendments, violates due process. The Florida Supreme Court has determined as much in *Joint Ventures*,[29] and I conclude no different result should follow under federal law. The County cannot, consistent with the Fifth and Fourteenth Amendment and Article X, section 6 of the Florida Constitution, employ its police power to extort property from private landowners and avoid the obligations inherent in these constitutional provisions.

As for the County's claim that this land-use scheme is saved by the fact that the landowner may pursue a claim for inverse condemnation and because the Ordinance itself allows the landowner to pursue a dedication waiver or a variance and, in the absence of such, the possibility of compensation for an unconstitutional exaction, I disagree. Federal and state courts alike recognize that inverse condemnation is not a substitute for the protections afforded landowners under principles of eminent domain. And, the availability of such a claim does not insulate the Ordinance from constitutional challenge. *See Joint Ventures*, 563 So.2d at 627; *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687,

---

[29]In its subsequent decision in *Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp.*, 640 So.2d 54, 58 (Fla. 1994), the Florida Supreme Court explained that its decision to declare a portion of the statute at issue in *Joint Ventures* unconstitutional was based on the conclusion that the offending provisions "sanctioned situations which would permit the state to take private property without just compensation." It explained further that, while the state's goal of conserving public funds was a legitimate purpose, "'the means [used were] not consistent with the constitution and the "freezing" of property as permitted under the statute was an improper exercise of the state's police power. *Id.* at 58 (quoting *Joint Ventures,* 563 So.2d at 626).

735-36 (1999).  As for the remedial provisions under the Ordinance, sections 319.9 and 319.10 do provide for an adjudicative process before the DRC by which the compulsory dedication may be challenged and variances of a sort may be obtained.  However, under these provisions, the County bears no obligation to establish the propriety of its compulsory dedication and the whole of the burden and costs of proving the dedication improper falls on the landowner.[30]  Thus, the remedial scheme also serves to relieve the County of the burdens of eminent domain in all such instances, even when the compulsory dedication works a takings.  That such provisions may in practice allow for a waiver of dedication, and perhaps even some compensation[31] in a given case, is not a defense to the facial challenge that the scheme itself violates due process because it is inconsistent with, and permits the County to avoid its obligations under, the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article X, Section 6 of the Florida Constitution.

In sum, I recommend that the court grant Hillcrest's motion for partial summary judgment on its claims at Counts VII and IX.  The provisions of the Ordinance at Sections 319.8 - 319.10 should be declared unconstitutional; the County enjoined from further enforcement of the provisions; and the compulsory dedication condition to Hillcrest's

---

[30]*Nollan* and *Dolan* make clear that such compulsory dedications are akin to a takings in contemplation of the Fifth and Fourteenth Amendments.  *See Dolan*, 512 U.S. at 383-85; *Nollan*, 483 U.S. at 831.  At least in cases where the exaction is made under an executive land-use decision, the Supreme Court makes clear that the burden of justifying the required dedication under a city's adjudicatory process is on the government.  *See Dolan,* 512 U.S. at 391 n. 8.  Here, the whole of the burden under these remedial provisions is placed on the landowner.

[31]The remedies provided under Section 319.9D do not assure just compensation as required by the state and federal constitutions.  Further, a plain reading of the section reveals that the remedies may well be illusory.  *See* Section 319.9D.

development approval and construction permit stricken.[32]  On this ruling, the temporary

takings claim at Count VI should proceed to trial.[33]

On these conclusions, it is unnecessary to address the remaining disputes in detail.  By

my consideration and essentially for the reasons set forth by the County, Hillcrest's motion as

to the remaining facial challenges at Counts VIII, X, XII, XIII, XIV, XV, XVI should be

denied,[34] and the County's motion for summary judgment as to these facial challenges

granted.  On these conclusions, the court need not reach the issues on the as-applied

challenges.  However, should it be appropriate to do so, then I recommend that the County's

challenge to Hillcrest's as-applied claims at Counts II, IV, and V be granted.  Because, I find

that the as-applied equal protection claim at Count III marginally survives each of the legal

challenges raised by the County and involves disputed questions of material fact, the County's

motion as to that count should be denied.

---

[32]By its allegations, Hillcrest also seeks damages on Count VII.  If such is the case, a trial on damages may be necessary.

[33]The County challenges the takings claims at Counts I and VI on grounds of ripeness and on a claim that Hillcrest consented to, failed to object to, waived and/or is estopped to complain of the dedication as a condition of the development approval and construction permit.  I find the ripeness argument without merit.  Resolution of the County's claim that Hillcrest consented, waived and/or is estopped from asserting the claims in Counts I and VI involves consideration of wholly disputed facts and thus is inappropriate on this motion.

[34]While the separation of powers claim under the Florida Constitution has certain appeal, I find the claim foreclosed in light of the Florida Supreme Court's decision in *Department of Agriculture & Consumer Servs. v. Bonanno*, 568 So.2d 24, 28-30 (Fla. 1990).  Likewise, for reasons also discussed in *Bonanno,* the facial right to jury trial claim is foreclosed as well.  *See id.* at 28.  As for the access to courts claim, the prisoner access cases relied upon by Hillcrest are inapposite to the circumstances here and that challenge likewise fails.

IV.

For the reasons set forth above, it is **RECOMMENDED** that **Pasco County's Motion for Summary Judgment** (Doc. 111) and **Plaintiff's Dispositive Motion for Partial Summary Judgment as to Pasco County's Liability Under Counts VII, VIII, IX, XII, XIII, XV and XVI** (Doc. 112) be **GRANTED in part** and **DENIED in part** as set forth herein.

Respectfully submitted on this
9th day of March 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record