UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HILLCREST PROPERTY, LLP,

     Plaintiff,

v.                                              CASE NO.: 8:10-cv-819-T-23TBM

PASCO COUNTY,

     Defendant.

_____/

## **ORDER**

Before 2025 Pasco County must build more and larger roads to accommodate the inevitable increase in automobile traffic.  Preferring to avoid the payment of "just compensation" after acquiring the necessary land by eminent domain, Pasco County has hatched a novel and effective but constitutionally problematic idea, a most uncommon regulatory regime that is crowned by Pasco County's "Right of Way Preservation Ordinance."

The unremarkable part of the regime designates new "transportation corridors," which expand certain Pasco County highways.  The specific instance contested in this action designates a new transportation corridor that widens State Road 52, an arterial east-west highway in Pasco County, and identifies the boundaries of State Road 52's future right-of-way.  For most landowners, whose land

is encroached by the transportation corridor but who have no plans to develop the land adjacent to the encroached land, no immediate consequence (and no constitutional jeopardy) occurs; Pasco County will take the expanded right-of-way – when needed – by eminent domain and will pay "just compensation" as determined by a jury in a Pasco County circuit court.

The remarkable part of the regime and the constitutional mischief appear in the instance of a landowner whose land is encroached by the new transportation corridor but who plans to develop the remaining land, which adjoins the encroachment.  The Ordinance requires Pasco County to deny the landowner's development permit and to forbid development of the land adjoining the new transportation corridor unless the landowner "dedicates" (conveys in fee simple) to Pasco County – for free – the land within the new transportation corridor.  In other words, to avoid the nettlesome payment of "just compensation," the Ordinance empowers Pasco County to purposefully leverage the permitting power to compel a landowner to dedicate land encroached by a transportation corridor.  In Pasco County, if there is no free dedication, there is no permit.

As the Pasco County Attorney proudly declares, "The right of way preservation ordinance [] drafted and defended by this office (which is one of only a few in the state) saves the County millions of dollars each year in right of way acquisition costs, business damages and severance damages."  (Doc. 112-2 at 3)  This bully result is effected by threatening to deny every proposed new use of private land,

from medical clinic to beauty parlor, from restaurant to bait shop, and by coercing everyone, great and small, rich and poor, popular and unpopular, unless the landowner completes the mandatory "voluntary" dedication of real estate.

This action asks whether a county ordinance can deny the issuance of a development permit pending a landowner's coerced conveyance to the county – for free – of the fee simple title to real estate both within a designated right-of-way and otherwise subject to eminent domain.  Asserting an array of federal and state constitutional grounds, Hillcrest challenges the Ordinance.  Guarding the multi-million-dollar, past and future trove from the Ordinance, Pasco County defends.

Because the Ordinance's *modus operandi* is not yet common, neither party cites legal authority directly deciding the constitutionality of an identical ordinance. Nonetheless, the features of the Ordinance are striking (and, as the Pasco County Attorney confirms, startlingly effective) and constitutional examination is essential. If constitutional, the Ordinance undoubtedly will become quickly fashionable, as counties seize a singular opportunity to procure land for public use by the thrifty expedient of coerced conveyance rather than by the historically and constitutionally prescribed mechanism of eminent domain (which is, viewed from a county's vantage, encumbered by the strictures of "due process" and "just compensation" and burdened by both the supervision of an independent judge and the informed discretion of a disinterested jury).

In a compelling report, the magistrate judge recommends finding the

Ordinance unconstitutional and enjoining the Ordinance's enforcement.  Agreeing

with the magistrate judge's recommendation, this order largely adopts the report and

the recommendation and adds analysis that, although viewing the law from a slightly

different vantage, finds the Ordinance both coercive and confiscatory in nature and

constitutionally offensive in both content and operation.

## 1.  Background

### 1.1.  The Ordinance

In accord with Florida's Local Government Comprehensive Planning and

Land Development Regulation Act, Pasco County adopted a "comprehensive plan"

to ensure adequate roadway to support development through 2025.  Pasco County

implements the comprehensive plan through maps, tables, and policies that identify

the right-of-way necessary to build Pasco County's future transportation corridors,

predominantly on privately owned land.

Pasco County adopted the Right of Way Preservation Ordinance in November,

2005.[1]  The Ordinance targets landowners who own property encroached by the

corridor and who aspire to build on the property adjoining the corridor.  In exchange

for a development permit, the Ordinance requires those landowners to agree to

---

[1] Pasco County codified the Ordinance at Section 319 of the Pasco County Land Development Code.  During this action, Pasco County adopted Ordinance 11-15, which moved the Ordinance without material amendment to Section 901.2 of the Code.  For clarity, both the old and the new numbers are cited in this order.

dedicate the corridor in fee simple to Pasco County.  Under the Ordinance, Pasco County withholds the construction permit until the landowner dedicates the property "by recordation on the face of the plat, deed, grant of easement, or other method acceptable to the County."  Code § 319.8(A); Code § 901.2(H).  If the property owner declines the dedication, Pasco County declines the construction permit.

Once a landowner dedicates the land to Pasco County, the landowner may apply to Pasco County's Development Review Committee for permission to use his former land until Pasco County needs to build the road.  The Ordinance provides a list of specific and temporary "interim uses," such as a produce stand or a bridal path for a residential zone or a boat storage yard or a ground to host "festivals, carnivals, community fairs, and the like" for a commercial zone.  Code § 319.6(C)(1); Code § 901.2(F)(3).  When and if Pasco County needs the land, the former landowner must remove any permitted, temporary use (for example, a lemonade stand, a Tilt-A-Whirl, or a putt-putt course).

### 1.1.1.  The Waiver

If expecting compensation for the conveyance, the landowner must apply to the Review Committee for a "waiver":

> Where the property owner believes that the amount of land required to be dedicated to the county under the [right-of-way dedication provision] exceeds the amount of land that is roughly proportional to the transportation impacts of the proposed development site and expanded development site, or believes that any other county transportation-related exaction, dedication, condition or requirement . . . is not roughly proportional to the

transportation impacts of the proposed development site and expanded development site, the property owner may apply to the development review committee for a dedication waiver.

Code § 319.9(A); Code § 901.2(I)(1).  The waiver application must contain the following:

a.  Appraised value of the development site and expanded development site before the section 306 development approval or other development permit/order, with and without the land to be dedicated pursuant to section 318.8, taking into account any interim uses and density transfers.

b.  Appraised value of the development site and expanded development site after the section 306 development approval or other development permit/order, with and without the land to be dedicated pursuant to section 318.8, taking into account any interim uses and density transfers.

c.  Traffic impact study (TIS) showing the transportation impacts of the proposed development.

d.  List of transportation mitigation provided or required to be provided by the development, including:

1)  The appraised value of any land dedicated or to be dedicated in accordance with a. and b. above;

2)  Certified cost estimates for all transportation improvements provided or required to be provided by the development;

3)  Estimated transportation impact fees paid or due for the development pursuant to Ordinance No. 04-05, as amended; and

4)  Any transportation mitigation or proportionate share payments required pursuant to section 402 of the land development code.

Code §  319.9(B)(2) (quotation consistent with the "old" numbering);

Code § 901.2(I)(2)(b).  The applicant must hire each expert and pay for each study, appraisal, report, and estimate required by the Ordinance.

The Review Committee reviews the application to:

> [D]etermine[] [whether] any portion of the land required to be dedicated . . . exceeds the amount of land that is roughly proportional to the transportation impacts of the proposed development site . . . [and to] determine[] [whether] the transportation requirement is not roughly proportional to the transportation impacts of the proposed development site or expanded development site (the "excess dedication amount.")

Code § 319.9(C); Code § 901.2(I)(4).  If the landowner, who exclusively bears the burden of proof, has proven to the Review Committee an "excess dedication," the Ordinance requires the Review Committee either to provide partial "compensation" or to waive the "excess dedication."[2]  The Ordinance permits the Review Committee to compensate the owner (1) by paying what Pasco County's property appraiser considers 115% of the value of  "the excess land required to be dedicated," (2) by granting impact fee credits, (3) by designing or constructing certain required transportation improvements, (4) by providing credit "for any transportation mitigation or proportionate share payments," or (5) by combining the above.  Code § 319.9(D); Code § 901.2(I)(5).  The landowner may appeal an unfavorable result to the Pasco County Board of County Commissioners but must exhaust the waiver provision before "filing any civil claim, action, or request challenging or seeking compensation for a dedication required by [the Ordinance]."  Code § 319.9(F)(2); Code § 901.2(I)(7)(b).

------

[2] The Ordinance suggests that the Review Committee could "waive" the dedication and allow the landowner to keep the land, but the prospect of waiving the "excess dedication" appears, at least, doubtful and, more likely, entirely illusory.  Across a local expanse of right-of-way, highway boundaries are typically smooth and parallel.

### 1.1.2. The Variance

Also, the landowner may apply to the Review Committee for a variance from "the strict requirements" of the waiver provision.  Code § 316; Code § 901.2(J)(3). Stated simply, with a variance Pasco County can waive a waiver applicant's waiver requirement, such as the applicant's providing a traffic study at the applicant's expense.  If the waiver requirement "causes a hardship," a landowner "shall be entitled to apply for a variance."  Code § 319.10(B); Code § 901.2(J)(2).  The Review Committee can grant a variance if the landowner, again bearing the burden of proof, proves that the "strict application" of the waiver provision causes (1) an "unreasonable or unfair non-economic hardship[] or an inordinate burden not created by the variance applicant" or (2) a conflict with an "important" goal, objective, or policy of Pasco County's comprehensive plan or other land development regulation.  Also, the Review Committee can grant a variance (1) if the variance provides a net economic benefit to Pasco County, (2) if the variance achieves "an innovative site or building design" that furthers the goals of Pasco County's comprehensive plan, or (3) the variance is necessary to comply with state or federal law.  Code § 316.1(A); Code § 901.2(J)(3).  If "the development review committee finds, based on the application submitted, and the substantial competent evidence presented, that the variance requested is the minimum necessary to alleviate or address" one of the following, the Review Committee "shall grant" the variance:

1.  The strict application of the land development regulation creates an unreasonable or unfair non-economic hardship, or an inordinate burden, that was not created by the variance applicant;

2.  The specific application of the land development regulation conflicts with an important goal, objective or policy of the comprehensive plan, or with the intent and purpose of another recently adopted land development regulation, that serves a greater public purpose;

3.  The granting of the variance will provide a net economic benefit to the taxpayers of Pasco County, and is not in conflict with important goals, objectives and policies of the comprehensive plan;

4.  The granting of the variance is necessary to achieve an innovative site or building design that furthers the goals, objectives and policies of the comprehensive plan;

5.  The intent and purpose of the land development regulation, and related land development regulations and comprehensive plan provisions, is met or exceeded through an improved or alternate technology or design;

6.  The granting of the variance is necessary to protect the public health, safety or welfare;

7.  The variance is necessary to comply with state or federal law; or

8.  The variance satisfies variance criteria set forth in the specific county land development regulation that is the basis for the variance request.[3]

---

[3] The Ordinance is no model of clarity, but a complete, guided excursion into the Ordinance's compositional mystery would expand this order unacceptably. Some highlights include:

The Ordinance's primary operative provision, Section 319.8(A), requiring dedication when the County approves the construction plan:

. . . Dedication shall be by recordation on the face of the plat, deed, grant of easement, or other method acceptable to the county. All dedications shall occur at record plat, construction plan approval

(continued...)

Code § 316.1(A); Code § 901.2(J)(3).

───────────────────

[3](...continued)
where a record plat is not required, or within 90 days of the county's request, whichever occurs first . . . .

The interim use definition, Section 319.4(D), describing "dedication" as a means of "conveyance" and allowing an interim use until "conveyance":

Interim use shall mean a use of the land in the transportation corridor prior to the date of conveyance of such land to the county for right-of-way, whether such conveyance is by dedication, acquisition, or other means.

Another interim use provision, Section 319.6(A), stating that a property owner may (if approved by the Review Committee) employ an interim use until "dedicat[ion]":

. . . The purpose of this section is to allow certain uses for a limited period of time within portions of a development site that are located within a transportation corridor in order to permit the property owner to make economic use of the property until such time as the land within the transportation corridor is to be dedicated to or acquired by the county. . . .

And another interim use provision, Section 319.6(B)(2)(a), identifying when a property owner must remove an "interim use" – at the "termination date" not at "dedication":

The applicant agrees to discontinue and remove, at the applicant's sole expense, the interim uses no later than the beginning of the first fiscal year in which monies for acquisition of right-of-way within the affected transportation corridor are first programmed by either the county, in the county's five-year capital improvement plan or capital improvement element, or the state department of transportation in the state department of transportation's five-year transportation improvement program (the 'termination date'). This agreement shall be evidenced by an affidavit which shall state that the interim uses shall be discontinued no later than the termination date. Such affidavit shall be recorded against the development site in the public records of the clerk of the circuit court of the county, and a copy of the recorded affidavit shall be provided to the county prior to the issuance of the first building permit within the development site. . . .

(continued...)

## 1.2.  Hillcrest's Land

In April, 2001, Hillcrest purchased sixteen-and-a-half acres of undeveloped property zoned "commercial" and located northwest of the Old Pasco Road and State Road 52 intersection, just west of Interstate 75.  In November, 2005, Pasco County enacted the Ordinance, which in conjunction with the maps and tables establishes a transportation corridor protruding fifty-feet into Hillcrest's property along the property's 1,400-foot, southern border with State Road 52.

---

[3](...continued)
And this one, Section 319.10(B), just for fun:

> Where the provisions of this section 319 cause a hardship, a property owner shall be entitled to apply for a variance in accordance with the provisions of section 316 of this Code.  Notwithstanding the foregoing, the procedures set forth in 319.9 shall be the county's exclusive administrative remedy for challenging a dedication required by 319.8 or other transportation requirement as not being roughly proportional to the transportation impacts of a development; provided, however, the procedures and appeal provisions set forth in the TIS resolution shall continue to apply to disputes or challenges relating to TIS or mitigation requirements of the TIS resolution, including the modifications to the TIS resolution for dedication waivers set forth in this Code, unless the development review committee or board of county commissioners determine that the procedures set forth in section 319.9 are a more appropriate remedy.  In addition, all remedies, rights, and obligations set forth in F.S. chs. 163.380; Rules 9J-2 and 9J-5, Florida Administrative Code; sections 402 and 618 of the land development code, and the county Transportation Impact Fee Ordinance (Ordinance No. 04-05 as amended) shall continue to apply, unless the development review committee or board of county commissioners determine that the procedures set forth in section 319.9 are a more appropriate remedy.

The report and recommendation construes (Doc. 168 at 10) the Ordinance as requiring removal of the interim use at the "termination date" not at "recordation."  No party objects to the magistrate judge's interpretation, and Hillcrest asserts no "vagueness" challenge.

Undertaking to develop a grocery-store-anchored shopping center, with the grocery store on the north side of the property and several smaller parcels on the south side of the property, Hillcrest in December, 2006, applied to the Review Committee for preliminary site-plan approval.  The proposed plan failed to depict the corridor.  In February, 2007, the Review Committee rejected Hillcrest's proposal and demanded that Hillcrest dedicate the fifty-foot corridor for future right-of-way.  In March, 2007, Hillcrest revised the site plan and removed improvements within the fifty-foot corridor.

During a meeting the following month, Pasco County, Florida's Department of Transportation (FDOT), and Hillcrest discussed the second proposed site plan. According to Pasco County, the parties discussed an FDOT plan to widen State Road 52 to a point 140-feet north of the existing right-of-way.  In total, Pasco County required a fifty-foot dedication from Hillcrest, and the FDOT required an additional ninety-foot setback on which Hillcrest could not build.  Because the second proposed site plan depicted improvements inside the FDOT's desired ninety feet, the Review Committee rejected Hillcrest's second proposal.

Negotiation continued.  In July, 2007, Hillcrest submitted a third proposed site plan with no improvement depicted inside the 140-foot future right-of-way.  Hillcrest accompanied the proposed site plan with a written reservation of rights objecting to the dedication:

> [Hillcrest] has redesigned the site accordingly in this submission pursuant to an understanding that such redesign neither represents the applicant's willingness to provide such right of way without compensation or that any such condition requiring such right of way donation will not be subject to challenge should the county and [Hillcrest] fail to reach agreement on the acquisition of such right of way by Pasco County or others.

(Doc. 119-1, ¶ 13)  During an August 23 meeting convened to discuss the third proposed site plan, Hillcrest's counsel stated that Hillcrest was "okay," "fine," and "in agreement" with a forty-foot dedication.[4]  However, Hillcrest denies any agreement to surrender property at no cost and claims an expectation of compensation for the entire 140 feet.  The managing member of Hillcrest explains:

> At the August 23, 2007, []Committee hearing, the County approved Hillcrest's preliminary site plans showing the 140[-]foot dedication.  As of August 23, 2007, it was still my understanding that the County was going to compensate Hillcrest based on the additional 140 feet, including severance damages, pursuant to the standing agreement between Hillcrest and the County, and that the County would deny the preliminary site plans if Hillcrest objected to the dedication requirement.

(Doc. 118-1, ¶ 13)  The Review Committee approved the third proposed site plan. The Review Committee's development order, which Hillcrest signed on October 17, 2007, provides that "the developer shall convey at no cost to Pasco County 110 feet of right-of-way from the centerline of [State Road] 52."  (Doc. 114-7 at 3-4) Although the development order permits a landowner to object within thirty days and to request an administrative appeal, Hillcrest requested no appeal.

---

[4] Pasco County suggests (Doc. 111 at 10 n.11) that Hillcrest's counsel's math "was off" and that counsel meant fifty feet.

During the next eight months, Pasco County denied at least three Hillcrest construction plans.  In June, 2008, Pasco County conditionally approved a Hillcrest construction plan but demanded the dedication.  Hillcrest executed the approval but stated, "Please be advised that our . . . acceptance of these conditions is subject to . . . reservation of any and all rights with respect to any and all exactions imposed under the conditions of approval."  (Doc. 118-6 at 1)  Before filing this action, Hillcrest neither applied for a dedication waiver or a variance nor pursued an administrative appeal or inverse condemnation action.[5]  Pasco County commenced no condemnation proceeding.  Hillcrest's property remains undeveloped.[6]

### 1.3.  The Report and Recommendation

Hillcrest sues and asserts federal and state claims for relief, including violations of the right to due process, to equal protection, to access to the courts, and to a jury trial and other state claims for relief, including an illegal taking and a violation of "separation of powers."  Hillcrest asserts no federal takings claim.  Hillcrest's core argument invokes two United States Supreme Court cases, *Nollan v. California Coastal*

---

[5] On August 22, 2011, Hillcrest sued the FDOT for inverse condemnation.  On December 14, 2012, the Circuit Court for Pasco County stayed the action in favor of this action. *Hillcrest Property v. Florida*, 51-2011-A-003825.

[6] According to Hillcrest, for two-and-a-half years the government agencies and Hillcrest negotiated compensation and severance damages and exchanged several oral offers for compensation.  According to Hillcrest, a cash shortage rendered Pasco County unable to provide compensation consistent with the estimate of Pasco County's appraisers.

*Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), that consider whether a government's requiring land in exchange for development approval violates the Fifth Amendment's Takings Clause, applied to the states through the Fourteenth Amendment.  Aspiring to invalidate the Ordinance, Hillcrest argues that Pasco County uses the permit authority as leverage to compel a landowner's relinquishing the right to just compensation.

Although the summary judgment motions present for resolution fifteen claims for relief, the magistrate judge correctly recognizes that the Ordinance proves most susceptible to challenge as a substantive due process violation.  Accordingly, the report and recommendation (Doc. 168) analyzes predominantly substantive due process.  The magistrate judge concludes that the Ordinance fails the applicable substantive due process standard, a "rational relation to a legitimate government purpose."  Despite the legitimate goal of accommodating future land use and traffic, the "means adopted by the County to accomplish the goal are an abuse of the County's police powers."  (Doc. 168 at 26)  The report states:

> In every instance brought within the purview of sections 319.8 and 319.10 of the Ordinance, landowners are compelled to surrender private property without compensation as a condition of development approval or permitting.  The dedication provision is no mere regulation of land use but rather a calculated measure by the County to avoid the burdens and costs of eminent domain and take private property without just compensation.  As constructed, the dedication requirement permits the County to leverage its police powers to extract private property without any individualized consideration of need and wholly without consideration of the matter of compensation when such works a taking. . . . [T]he scheme impermissibly tilts the playing field in favor of the County to the end that the County has saved millions

of dollars since the scheme was implement[ed]. . . . Here, the County has purposefully devised a land-use scheme which sanctions, indeed commands, in all instances within its purview and without individualized consideration, the dedication of such private property without compensation as a condition of development approval or permit.  In doing so, the Ordinance commands that [certain] landowners be forced "to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole," the very thing the Takings Clause of the United States Constitution and the equivalent provision of the Florida Constitution are intended to prevent.  By my consideration, such a scheme, being inconsistent with the Fifth and Fourteenth Amendments, violates due process. . . . The County cannot . . . employ its police power to extort property from private landowners and avoid the obligations inherent in these constitutional provisions.

(Doc. 168 at 26-27)  Explaining the Ordinance's aggressive method of "accommodating future land use and traffic," the report observes that *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), "inform the due process analysis" but "do not set forth the applicable standard."  (Doc. 168 at 25)  The magistrate judge details the exaction process described in *Nollan* and *Dolan* and highlights the Ordinance's purposeful circumvention of eminent domain.  Among other recommendations, the report endorses granting Hillcrest's motion for summary judgment on the alleged "facial" violations of due process.[7]

---

[7] In particular, the report recommends:

- Denying Pasco County's motion for summary judgment on Count I (taking; as-applied; Florida Constitution);

(continued...)

---

[7](...continued)

- Granting Pasco County's motion for summary judgment on Count II (due process; as-applied; United States Constitution);

- Denying Pasco County's motion for summary judgment on Count III (equal protection; as-applied; United States Constitution);

- Granting Pasco County's motion for summary judgment on Count IV (due process; as-applied; Florida Constitution);

- Granting Pasco County's motion for summary judgment on Count V (equal protection; as-applied; Florida Constitution);

- Denying Pasco County's motion for summary judgment on Count VI (temporary taking; as-applied; Florida Constitution);

- Granting Hillcrest's motion for summary judgment on Count VII (due process; facial; United States Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count VIII (equal protection; facial; United States Constitution);

- Granting Hillcrest's motion for summary judgment on Count IX (due process; facial; Florida Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count X (equal protection; facial; Florida Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count XII (access to courts; facial; Florida Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count XIII (separation of powers; facial and as-applied; Florida Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment Count XIV (right to a jury trial; facial; Florida Constitution);

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count XV (access to courts; facial; United States Constitution);

(continued...)

Each party objects (Docs. 170 and 171) to each adverse recommendation.  In response to the adverse ruling of a "facial" violation of due process, Pasco County argues (1) that, in some conceivable application, the Ordinance applies constitutionally, (2) that *Nollan* and *Dolan* "were 'taking' cases . . . , not due process cases," (3) that *Nollan* and *Dolan* "were as-applied cases, not facial cases," (4) that *Nollan* and *Dolan* "involved *ad hoc* adjudicative exactions, rather than legislative generally-applicable exactions, such as the Ordinance here," (5) that *Dolan* "expressly declined to shift the burden to the government for legislative exactions, such as the Ordinance here," (6) that the waiver and variance procedure insulates the Ordinance from a successful facial challenge, (7) that the report's recommending summary judgment for Pasco County on the as-applied claim precludes summary judgment for Hillcrest on the facial claim, (8) that the applicable limitation bars the claim, and (9) that, even if the Ordinance facially violates due process, Eleventh Circuit law and Hillcrest's pre-trial statement preclude damages.  Although some of the arguments require an elaboration of the report and recommendation and further explanation of the applicable law, none saves the Ordinance.

---

[7](...continued)

- Denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on Count XVI (right to a jury trial; facial; United States Constitution).

## 2.  Discussion
## 2.1.  Substantive Due Process[8]
### 2.1.1.  The Ordinance "Applies"

Although a facial due-process challenge ripens upon the enactment of the Ordinance, an as-applied challenge ripens once the Ordinance has been finally applied to the property.[9] *Eide v. Sarasota County*, 908 F.2d 716, 725 & n.14 (11th Cir. 1990); *Pennell v. City of San Jose*, 485 U.S. 1 (1988) (adjudicating a facial due-process and a facial equal-protection challenge while refusing to consider an as-applied due process and an as-applied equal protection challenge).  Pasco County argues that the as-applied substantive due process claim fails as "unripe."  Pasco County relies on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), an opinion by Justice Blackmun that announced a stringent "ripeness" test (1) for a just compensation claim and (2) for a claim that a "regulation goes too far."  *Williamson County* held that before either claim ripened (1) "the government entity charged with implementing the regulations [must] reach[] a final decision regarding the application of the regulations to the property at issue" and (2) the plaintiff must "seek compensation through the procedures the state has provided for doing so."  473 U.S. at 186, 194.  Pasco County argues with

---

[8] Count II (as-applied substantive due process claim under the U.S. Constitution); Count VII (facial substantive due process claim under the United States Constitution).

[9] The "ripeness" analysis governs the equal protection challenge also.  *Eide v. Sarasota County*, 908 F.2d 716, 724-25 (11th Cir. 1990).

considerable support that *Williamson County* requires Hillcrest to pursue a waiver or a variance, each of which Hillcrest declined.

*Williamson County*'s "regulatory takings" claim originates from Justice Holmes's often quoted statement, "'[I]f regulation goes too far it will be recognized as a taking.'"  473 U.S. at 198 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  But, *Williamson County* never "clarif[ied] whether 'regulatory takings' claims were properly cognizable under the Takings Clause or the Due Process Clause."  *Lingle v. Chevron U.S.A.*, 544 U.S. 528, 541-42 (2005).

After quoting the "goes too far" language, *Lingle* observes that "the rub, of course, has been – and remains – how to discern how far is 'too far.'"  544 U.S. at 538.  *Lingle* identifies four, distinct, takings claims arising if the government (1) permanently and physically invades private property, (2) deprives an owner of all economically beneficial use of the private property, (3) fails to comply with the "regulatory taking factors" announced in *Penn Central Transp. v. New York City*, 438 U.S. 104 (1978), or (4) takes land in exchange for development approval, as discussed in *Nollan* and *Dolan*.  As *Lingle* confirms, the *Williamson County* "regulatory takings" claim – the claim that a "regulation goes too far" – raises a takings claim, not a due process claim.  As the Eleventh Circuit recognizes in *Eide*:

> [T]he court cannot ascertain whether the regulation has gone "too far" until it can analyze the effect that the zoning decision has had on the value of the property.  Thus, in *Williamson County*, the Supreme Court applied the finality prong of the ripeness analysis, just as it had for the just compensation claim.  This rationale is

> not applicable to an as applied arbitrary and capricious due
> process claim. Such a claim does not have to establish that the
> regulation has gone "too far"; rather, a property owner's rights
> have been violated the moment the government acts in an
> arbitrary manner and (in an as applied challenge) that arbitrary
> action is applied to the owner's property. . . . This court in
> *Greenbriar* erroneously assumed it was controlled by *Williamson
> County*, and thus erroneously used the *Williamson County* analysis.

908 F.2d at 724 n.13. Although finding that *Williamson County* does not apply to an

"arbitrary and capricious" due process claim, *Eide* confirms a requirement similar to

*Williamson County*'s "finality" requirement, that is, "the particular zoning decision

being challenged must be finally applied to the property at issue." *Eide*, 908 F.2d at

725. "If the authority has not reached a final decision with regard to the application

of the regulation to the landowner's property, the landowner cannot assert an as

applied challenge to the decision because, in effect, a decision has not yet been

made." 708 F.2d at 725. The point at which a "final decision" occurs depends on

the remedy sought:

> We can conceive of an arbitrary and capricious due process claim
> in which the final decision requirement would be satisfied with a
> single arbitrary act. For example, if a landowner's initial
> application for commercial zoning had been rejected at a
> preliminary stage simply because the landowner was a redhead,
> the landowner's arbitrary and capricious due process claim
> challenging that action would be ripe. That decision can be
> immediately challenged because the arbitrary and capricious act
> has been applied to him. However, the remedy for the mere
> rejection of the redheaded landowner's application would not be
> an injunction requiring a grant of commercial zoning, but rather
> would be the overturning of the arbitrary decision, possibly an
> injunction against similar irrational decisions, and other remedies
> depending on the situation. The landowner could not prove the
> damages that Eide seeks – *i.e.* commercial zoning – without first

> claiming and proving a final decision by the local authority
> denying commercial zoning.

*Eide*, 908 F.2d at 726.  Hillcrest's as-applied due process claims seek, aside from the

Ordinance's invalidation and attorneys' fees and costs, only damages "for having

violated Hillcrest's due process rights." (Doc. 36 at 23)  The as-applied due process

claims seek neither an award of damages (other than nominal) nor an injunction

ordering Pasco County to approve the construction plan.  Neither a waiver nor a

variance, each a procedure within the Ordinance, will exempt Hillcrest from the

Ordinance (although a waiver or variance might exempt Hillcrest from the dedication

requirement or another part of the Ordinance).  Thus, Pasco County has reached an

effectively final decision that the Ordinance applies to Hillcrest.  For the successful

as-applied due process claim, nominal damages are available.

### 2.1.2.  A Timely Challenge

Pasco County argues that the applicable four-year limitation for a facial due

process challenge begins when the law is enacted.  This theory condones the

government's delaying enforcement of a new law until expiration of the applicable

limitation and forever insulating the unconstitutional law.  Instead, a claim for relief

accrues and the applicable limitation begins at the occurrence of the last element of

the legal claim – usually, once an injury occurs.[10]  Hillcrest's injury occurred the

---

[10] However, in a facial takings challenge, the actionable injury occurs, the claim accrues, and
the limitation period begins immediately upon the effectiveness of the statute or ordinance.  Hillcrest
(continued...)

moment Pasco County subjected Hillcrest to the Ordinance.  At the earliest,

Hillcrest's claim accrued in December, 2006, when Hillcrest applied for site plan

approval.  (The claim probably accrued in February, 2007, when Pasco County first

denied the site plan based on Hillcrest's failure to comply with the Ordinance.).

Hillcrest sued on April 7, 2010, within the four-year limitation for a Section 1983

claim in Florida.  *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citing *City of*

*Hialeah v. Rojas*, 311 F.3d 1096, 1102 n.2 (11th Cir. 2002) ("Section 1983 claims are

governed by the forum state's residual personal injury statute of limitation, which in

Florida is four years.")).  Hillcrest's substantive due process claims and Hillcrest's

equal protection claims are neither premature nor barred.

### 2.1.3.  "Informing" Due Process

Citing opinions from nearly every jurisdiction in the country, each party

consistently conflates the Takings Clause with the Due Process Clause.  The parties'

conflation warrants a clarifying account of the pertinent constitutional first principles.

*Lingle v. Chevron U.S.A.*, 544 U.S. 528 (2005), affirms a jurisprudential divide between

the Takings Clause and the Due Process Clause.  *Lingle* addresses *Agins v. City of*

*Tiburon*, 447 U.S. 255 (1980), which held that government regulation of private

property "'effects a taking if [such regulation] does not substantially advance

---

[10](...continued)
neither pursues a federal just compensation claim nor argues that the passage of the Ordinance
caused an injury.

legitimate state interests."  The *Agins* formulation, Justice O'Connor writes for a

unanimous Court, "[H]as been [improperly] ensconced in . . . Fifth Amendment

takings jurisprudence" rather than properly limited to substantive due process

jurisprudence.  *Lingle*, 544 U.S. at 531-32.  Unlike a takings inquiry, the substantive

due process inquiry provides a "means-end" analysis and asks "whether a regulation

of private property is effective in achieving some legitimate government purpose."

544 U.S. at 542.  The substantive aspect of due process thus protects a citizen from an

arbitrary, capricious, or irrational regulation that fails to serve a legitimate

governmental objective.  *Lingle*, 544 U.S. at 542; *County of Sacramento v. Lewis*, 523

U.S. 833, 846 (1998) (observing that the Due Process Clause protects a citizen against

"the exercise of power without any reasonable justification in the service of a

legitimate governmental objective").

Rather than evaluating the effectiveness of a regulation in achieving a

legitimate objective, the Takings Clause asks whether the government forces "'some

people alone to bear public burdens which, in all fairness and justice, should be borne

by the public as a whole.'"  *Lingle*, 544 U.S. at 542 (quoting *Armstrong v. United States*,

364 U.S. 40, 49 (1960)).  The Takings Clause "does not bar government from

interfering with property rights, but rather requires compensation 'in the event of

otherwise proper interference amounting to a taking.'"  544 U.S. at 543 (quoting *First

English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 314 (1987)).  If

a land use decision serves a "public use," an interference with or seizure of real property may be constitutionally rectified by paying "just compensation." Conversely, if a land use decision either fails the "public use" requirement of the Takings Clause or is "so arbitrary as to violate due process," the constitutional injury is irremediable. *Lingle*, 544 U.S. at 543.

    *Lingle* censures the "commingling of due process and takings" law, 544 U.S. at 541, and Pasco County (although consistently committing the "commingling" error) accuses the magistrate judge of violating *Lingle*'s command.  Consequently, Pasco County objects to the magistrate judge's holding that the Takings Clause, as construed by *Nollan* and *Dolan*, "inform[s] the due process analysis" but "do[es] not set forth the applicable standard." (Doc. 168 at 25)  Pasco County's objection misunderstands the magistrate judge's finding.  Instead of finding that the Ordinance deprives a landowner of property without paying just compensation, the magistrate judge finds that the Ordinance leverages the police power to compel a landowner to relinquish rights guaranteed by the Takings Clause – a finding that the Ordinance fails to advance a legitimate governmental purpose.  Although not "set[ting] forth the applicable standard," *Nollan* and *Dolan* are central to understanding the Ordinance's perverse scheme and *Nollan* and *Dolan* "inform the due process analysis."

### 2.1.4.  Pasco County Wields the Police Power to Compel a Landowner's Surrendering Rights Guaranteed by the Takings Clause

*Nollan* and *Dolan* consider "unconstitutional conditions," a constitutional prohibition against government's employing the government's power in order to secure the relinquishment of a citizen's constitutional rights.  In other words, even if enjoying absolute discretion to grant or deny a citizen a governmental accommodation, such as a development permit, a government cannot condition the receipt of the governmental accommodation on the relinquishment of a constitutional right.  *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Pickering v. Bd. of Ed. of Township High Sch. Dist. 205,* 391 U.S. 563 (1968); *Speiser v. Randall*, 357 U.S. 513 (1958)*; Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004).  The rule appears most often in decisions addressing rights guaranteed by the Free Speech Clause, *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988), and the Free Exercise Clause, *Hobbie v. Unemployment Appeals Commission of Fla.*, 480 U.S. 136 (1987), but the rule appears also in decisions addressing rights guaranteed by the Search and Seizure Clause, *Bourgeois*, 387 F.3d at 1324, the Takings Clause, *Dolan*, 512 U.S. at 385, *Nollan*, 483 U.S. at 834, and the Due Process Clause.  *Frost v. Railroad Commission*, 271 U.S. 583 (1926).

For certain "exactions," certain "land-use decisions conditioning approval of development on the dedication of property to public use," *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 702 (1999), a limited exception applies to the

general rule of unconstitutional conditions.  *Lingle*, 544 U.S. at 547; *Dolan*, 512 U.S. at 385; *Nollan*, 483 U.S. at 834.  The limited exception for exactions in accord with *Nollan* and *Dolan* recognizes that state and local government, exercising the police power, possess the authority to impose certain, limited conditions on land use.

In *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), the California Coastal Commission established a "comprehensive program" to secure continuous public access laterally along Faria Beach "as the lots undergo development or redevelopment."  A quarter of a mile south of Faria County Park and 1,800 feet north of another public beach, the Nollans leased – with an option to buy – a beachfront lot on which sat a 504-square-foot bungalow that the Nollans rented to travelers.  The Nollans' westerly property line was the mean high water mark on the beach, and an eight-foot-high seawall separated the Nollans' beach property from the remainder of the Nollans' property.

The bungalow had fallen into disrepair, and the Nollans' option to purchase was conditioned on the Nollans' demolishing and replacing the bungalow. Attempting to build a three-bedroom home consistent with development in the beach-side neighborhood, the Nollans applied for a permit.  The Coastal Commission staff recommended granting the permit on the condition that the Nollans dedicate an easement to enable the public to walk parallel to the ocean and pass laterally across the Nollans' beach property.  The Nollans contested the

dedication, but the Coastal Commission overruled the objection and granted the permit subject to the Nollans' recording the easement.

The Nollans appealed to the Ventura County Superior Court, which agreed with the Nollans that, absent evidence that the proposed development would have a direct adverse impact on public access to the beach, the Coastal Commission could not impose the condition. The superior court remanded to the Coastal Commission for an evidentiary hearing. After the hearing, the Coastal Commission affirmed the dedication and found that the new house would "increase blockage of the view of the ocean, thus contributing to the development of 'a wall of residential structures' that would prevent the public 'psychologically . . . from realizing [that] a stretch of coastline exists nearby that they have every right to visit.'" 483 U.S. at 828-29. Additionally, the new house "would increase private use of the shorefront," which increase, along with neighboring development, "would cumulatively 'burden the public's ability to traverse to and along the shorefront.'" 483 U.S. at 829. The Coastal Commission required the Nollans to offset the burden by dedicating beach property to provide access from the northern public beaches to the southern public beach. The action reached the California Court of Appeal, which agreed with the Coastal Commission, and the Nollans appealed to the U.S. Supreme Court.

A government is generally prohibited from enforcing an "unconstitutional condition," that is, from conditioning a governmental accommodation on a citizen's relinquishing a constitutional right. For example, the Fourth Amendment prevents a

state's conditioning the issuance of a driver's license on a citizen's waiving the

prohibition against unreasonable search and seizure of the citizen's automobile.  The

first step in identifying an "unconstitutional condition" is determining whether the

target of the government's required relinquishment is a constitutional right.  Thus,

*Nollan* begins with the elemental premise that:

> Had California simply required the Nollans to make an easement
> across their beachfront available to the public on a permanent
> basis in order to increase public access to the beach, rather than
> conditioning their permit to rebuild their house on their agreeing
> to do so, we have no doubt there would have been a taking.

483 U.S. at 831.  But also, *Nollan* recognizes that, because "[g]overnment hardly

could go on if to some extent values incident to property could not be diminished

without paying for every such change in the general law," *Pennsylvania Coal*, 260 U.S.

at 413, a limited exception to the general rule of "unconstitutional conditions"

applies to certain land use conditions.  Thus, *Nollan* asks whether California's

conditioning a development permit on the establishment of an easement triggers the

limited land use exception or violates the Takings Clause.[11]

California argued that a "permit condition that serves the same legitimate

police power purpose as a refusal to issue the permit should not be found to be a

---

[11] Justice Brennan's dissent (in which Justice Marshall joined) and most opinions and
academic articles published after *Nollan*, use the term "governmental benefit" or "governmental
privilege" to describe a building permit (or the item or action the government "permits" the citizen
to accomplish in exchange for confiscating the property).  The phrase is subtly misleading and
pernicious.  As *Nollan* observes: "[T]he right to build on one's own property – even though its
exercise can be subjected to legitimate permitting requirements – cannot remotely be described as a
'governmental benefit.'"  483 U.S. at 833 n.2.

taking if the refusal to issue the permit would not constitute a taking." *Nollan*, 483 U.S. at 836.  The Supreme Court agrees but notes that the dedication of an easement to allow the public to stroll along a private beach from a public beach to another public beach "utterly fails" to decrease "blockage of the view of the ocean" from the street.  In other words, "the condition substituted for the prohibition utterly fails to further the end advanced as the justification for the prohibition." 483 U.S. at 837.  If failing to help mitigate the purported public hardship caused by the development, the permit condition becomes leverage and the purpose of the permit condition becomes "the obtaining of an easement to serve some valid governmental purpose, but without payment of compensation, [in other words,] 'an out-and-out plan of extortion.'" 483 U.S. at 837 (quoting *J.E.D. Associates v. Atkinson*, 432 A.2d 12, 14-15 (1981)).  Because the acquisition of necessary right-of-way along State Road 52 directly assists 2025 transportation in Pasco County, Hillcrest's claim is not a *Nollan* claim (although *Nollan* establishes a generally applicable constitutional baseline).

Seven years later in *Dolan v. City of Tigard*, 512 U.S. 374 (1994), the Supreme Court considered another challenge to an exaction.  Oregon enacted a "comprehensive land use management program" that required each municipality to adopt new "comprehensive land use plans" to accomplish statewide planning goals. The City of Tigard adopted a "Community Development Code," which required landowners within the central business district to comply with a 15% open-space and landscaping requirement.  After a transportation study identified traffic congestion as

a problem in the central business district, the city adopted a plan for a bicycle pathway.  Designed to encourage alternatives to a short automobile trip, the plan required a landowner to dedicate land "where provided for in the [bicycle] pathway plan." 512 U.S. at 378.  The city adopted a "Master Drainage Plan" that suggested channel excavation and other improvements to the Fanno Creek Basin area next to Dolan's property.

Dolan owned a 1.67-acre parcel accommodating a 9,700 square-foot plumbing and electrical supply store and a gravel parking lot.  The creek flowed through the southwestern corner of the parcel and along the western border, and a part of Dolan's property sat within a part of the city's "greenway system."  Seeking to double the size of the store and to pave a thirty-nine-space parking lot, Dolan applied for a permit. The city granted the permit on condition that Dolan dedicate "sufficient open land area for greenway adjoining and within the floodplain.  This area shall include portions at a suitable elevation for the construction of a [bicycle] pathway within the floodplain in accordance with the adopted [bicycle] plan." 512 U.S. at 379-80.  The city required Dolan to dedicate roughly 10% of the property but permitted Dolan to use the dedicated property to satisfy the 15% open space and landscaping requirement.

Dolan requested a variance, for which the city required Dolan to prove to the city that "the literal interpretation of the applicable zoning provisions would cause 'an undue or unnecessary hardship' unless the variance is granted." 512 U.S. at 380.

Dolan argued that her redevelopment would not conflict with the policy underlying the comprehensive plan.  The city denied the variance and (1) found that "[i]t is reasonable to assume that customers and employees of the future uses of this site could utilize a [bicycle] pathway adjacent to this development for their transportation and recreational needs," (2) observed that "the site plan has provided for bicycle parking in a rack in front of the proposed building and '[i]t is reasonable to expect that some of the users of the bicycle parking provided for by the site plan will use the pathway adjacent to Fanno Creek if it is constructed," and (3) concluded that the bicycle pathway "'could offset some of the traffic demand on [nearby] streets and lessen the increase in traffic congestion.'"  512 U.S. at 381-82.  The city noted also that the floodplain dedication would be "reasonably related" to Dolan's request to increase the impervious surface on the site.  After the Land Use Board of Appeals denied the appeal and the Oregon Court of Appeals affirmed, Dolan appealed to the Oregon Supreme Court, which affirmed.

*Dolan* begins with the premise that, had the city taken private property without paying just compensation, the taking would violate the Takings Clause.  "Without question, had the city simply required petitioner to dedicate a strip of land along Fanno Creek for public use, rather than conditioning the grant of her permit to redevelop her property on such a dedication, a taking would have occurred."  512 U.S. at 384.  Dolan explains that, if a *Nollan* "essential nexus" exists, the Supreme Court "must decide the required degree of connection between the exactions and the

projected impact of the proposed development," a question not considered in *Nollan*

because "the connection [did] not meet even the loosest standards." *Dolan*, 512 U.S.

at 386. *Dolan* agrees with the city (1) that limiting development of impervious surface

along Fanno Creek helps prevent flooding along Fanno Creek and (2) that building a

bicycle pathway in the central business district mitigates traffic congestion. The city

in *Dolan*, like Pasco County in the present instance, faced no *Nollan* problem.

     *Dolan* next turns to whether the extent of the exaction bears the "required

relationship to the projected impact of [Dolan's] proposed development." 512 U.S.

at 388. After surveying cases from several states that employ a different standard to

determine the "required relationship," *Dolan* settles on "rough proportionality" and

emphasizes that the burden of proof necessarily rests on the government:

> We think a term such as "rough proportionality" best
> encapsulates what we hold to be the requirement of the Fifth
> Amendment. No precise mathematical calculation is required,
> but the city must make some sort of individualized determination
> that the required dedication is related both in nature and extent to
> the impact of the proposed development.

512 U.S. at 391. *Dolan* observes that, even without the dedication, the city already

required 15% open space and that, even without the dedication, the undeveloped

floodplain would nearly satisfy the 15% requirement. "But the city demanded

more," *Dolan* says, "[the city] not only wanted petitioner not to build in the

floodplain, but it also wanted petitioner's property along Fanno Creek for its

greenway system" and "has never said why a public greenway, as opposed to a

private one, was required in the interest of flood control." 512 U.S. at 393.  As

opposed to a simple use restriction, the dedication, "eviscerate[s]" Dolan's right to

exclude others from her property, and the city never explains how "recreational

visitors trampling along the floodplain easement are sufficiently related to the city's

legitimate interest in reducing flooding problems along Fanno Creek." 512 U.S.

at 393.

Turning to the bicycle path, *Dolan* agrees that the redevelopment will increase

traffic in the central business district and that dedications for public avenues, such as

streets and sidewalks, "are generally reasonable exactions to avoid excessive

congestion from a proposed property use." 512 U.S. at 395.  Fatally, however, the

city offered no specific facts to demonstrate "that the additional number of vehicle

and bicycle trips generated by petitioner's development reasonably relate to the city's

requirement for a dedication of the [bicycle] pathway easement." 512 U.S. at 395.

*Dolan* emphasizes that "no precise mathematical calculation is required, but the city

must make some effort to quantify its findings." 512 U.S. at 395.  *Dolan* reverses the

Oregon Supreme Court.

Maintaining the entire burden of proof on the government, *Nollan* and *Dolan*

confirm that, rather than conferring a power on the government, the Takings Clause

confirms a right in the citizen.  A government's power to effect a limited exaction is a

necessary but limited exception to the constitutional directive that no private property

shall "be taken for public use, without paying just compensation." *Nollan* ensures

that land taken by an exaction mitigates a public hardship to which the development contributes. *Nollan* never reaches the issue of the amount of land exacted. *Nollan* finds that an easement along the beach behind the Nollans' house fails to advance the public's viewing the beach from the street in front of the Nollans' house, regardless of how much or how little beach California exacts from the Nollans. *Dolan* ensures that a government can exact no more land than necessary to mitigate the development's contribution to the public hardship. The government – and not the landowner – bears the burden of both proving a "rough proportionality" and "quantify[ing] its findings." The government's failure to satisfy each of these requirements violates the Takings Clause. If taking an amount of land in excess of the amount that the government has proven necessary to mitigate the development's contribution to the public hardship, the government must proceed as it always has – through condemnation, in which the government bears the burden of proof and a disinterested fact-finder determines "just compensation."

> In rejecting petitioner's request for a variance from the pathway dedication condition, the city stated that omitting the planned section of the pathway across petitioner's property would conflict with its adopted policy of providing a continuous pathway system. But the Takings Clause requires the city to implement its policy by condemnation unless the required relationship between petitioner's development and added traffic is shown.

*Dolan*, 512 U.S. at 395 n.10.

Under the Takings Clause the infirmity of the Ordinance is clear. As the report and recommendation details, the Ordinance's scheme to require the landowner to

prove the absence of a "rough proportionality" – rather than Pasco County's bearing

the burden to prove a "rough proportionality" – conflicts irreconcilably with *Dolan*.

Without Pasco County's "quantify[ing] the findings," the permit condition – an

uncompensated, fee simple dedication of property – will never comply with the

Takings Clause.

The Ordinance empowers Pasco County to take an amount of land in excess of

the amount that Pasco County, "but for" the Ordinance, would bear the burden of

proving necessary to mitigate Hillcrest's addition to traffic congestion.  Instead of

proceeding through eminent domain, in which the government proves a public need

and a disinterested fact-finder determines "just compensation," the Ordinance

requires Pasco County to prove nothing and empowers Pasco County to determine

the "just compensation," if any, Pasco County will pay.  *Nollan*, 483 U.S. at 841-42

("California is free to advance its 'comprehensive program,' if it wishes, by using its

power of eminent domain for this 'public purpose,' see U.S. Const., Amdt. 5; but if it

wants an easement across the Nollans' property, it must pay for it.").

As *Nollan* observes, an exaction that fails to strictly comply with the

requirements of the Takings Clause abets the state's holding for ransom a citizen's

right to build on his own property.  Unless the landowner conveys to the government

valuable land for free, the property remains forever undeveloped.  As *Nollan* observes,

a perverse exaction accomplishes an "out-and-out plan of extortion."[12] 483 U.S. at

837. Consequently, if a landowner refuses the Ordinance's demand for a dedication,

the property remains undeveloped; if a landowner yields to the Ordinance's demand,

the extortion succeeds.[13]

As Pasco County argues and as *Lingle* confirms, an exaction athwart *Nollan* and

*Dolan* results in an uncompensated taking and not a deprivation of due process. But

the Ordinance presents a different situation: by legislative fiat, Pasco County uses a

development permit to compel a landowner either to convey valuable land for free or

to submit to a regime castigated by *Dolan*. In other words, Pasco County wields the

police power to compel a landowner's abandoning rights guaranteed by the Takings

Clause.

The magistrate judge correctly finds that *Nollan* and *Dolan* "inform the due

process analysis" but "do not set forth the applicable standard" (Doc. 168 at 25); the

magistrate judge correctly finds that Pasco County improperly uses the police power;

and the magistrate judge correctly finds that the Ordinance fails to rationally relate to

---

[12] Reifying this uncomfortable analogy, the Hobbs Act, 18 U.S.C. § 1951, defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Black's Law Dictionary* 623 (8th ed. 2004) defines "extortion" as "[t]he offense committed by a public official who illegally obtains property under the color of office; esp., an official's collection of an unlawful fee."

[13] This point defeats Pasco County's brazen argument that Hillcrest "waived" a legal challenge by at one point "agreeing" to the dedication.

a legitimate governmental purpose. But the Ordinance affronts substantive due process for additional reasons.

### 2.1.5. Pasco County Wields the Police Power to Avoid Eminent Domain

Since the 1985 amendment of the Local Government Comprehensive Planning and Land Development Regulation Act, Florida courts have adjudicated the constitutional propriety of "thoroughfare maps." The Supreme Court of Florida invalidated the statutorily prescribed execution of a thoroughfare map in *Joint Ventures, Inc. v. Dep't of Transportation*, 563 So. 2d 622 (Fla. 1990), and upheld a thoroughfare map in *Palm Beach County v. Wright*, 641 So. 2d 50 (Fla. 1994).

In *Joint Ventures*, the plaintiff owned 8.3 acres of vacant land adjacent to Dale Mabry Highway in Tampa. The plaintiff contracted to sell the property contingent on the buyer's obtaining the necessary development permit. The FDOT determined that expansion of the highway required 6.49 acres of the plaintiff's land for storm water drainage. Accordingly, under Section 337.241, Florida Statutes, the FDOT recorded a map of reservation that prevented the issuance of a development permit. The statute required that a development permit "shall not be issued for a period of 5 years from the date of recording such map. The 5-year period may be extended for an additional 5-year period [by the same recording method]." 563 So. 2d at 623.

In the district court of appeal, the plaintiff had argued that the statute's moratorium "amounted to a taking because the statute deprived [the owner of a]

substantial beneficial use of [the] property." 563 So. 2d at 624. The FDOT

responded that, in a valid exercise of the police power, the statute "regulates" rather

than "takes." The district court of appeal upheld the statute because the plaintiff

possessed a remedy in inverse condemnation.[14] The district court of appeal certified

the question "whether [the statute's subsections] are unconstitutional in that they

provide for an impermissible taking of property without just compensation and deny

equal protection and due process in failing to provide an adequate remedy." 563

So. 2d at 623. The Supreme Court of Florida clarified:

> [W]e do not deal with a claim for compensation, but with a
> constitutional challenge to the statutory mechanism. Our inquiry
> requires that we determine whether the statute is an appropriate
> regulation under the police power, as DOT asserts, or whether the
> statute is merely an attempt to circumvent the constitutional and
> statutory protections afforded private property ownership under
> the principles of eminent domain.

563 So. 2d at 625.

The FDOT argued that the statute "is a permissible regulatory exercise of the

state's police power because it was necessary for various economic reasons." 563

So. 2d at 625. During discovery, the legislative staff admitted that the statute sought

to reduce the cost of a prospective property acquisition (rather than to prevent an

injurious use of private property). Although the thrifty accomplishment of a

---

[14] "Inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *United States v. Clarke*, 445 U.S. 253, 257 (1980) (Rehnquist, J.) (quoting D. Hagman, *Urban Planning and Land Development Control Law* 328 (1971)).

legitimate objective is a proper governmental purpose, thrifty accomplishment of a

legitimate objective by the circumvention of the constitutional guarantees attendant

to eminent domain is neither a legitimate objective nor a proper governmental

purpose:

> For example, without a development moratorium, land
> acquisition costs could become financially infeasible.  If
> landowners were permitted to build in a transportation corridor
> during the period of FDOT's preacquisition planning, the cost of
> acquisition might be increased.  Rather than supporting a
> "regulatory" characterization, these circumstances expose the
> statutory scheme as a thinly veiled attempt to "acquire" land by
> avoiding the legislatively mandated procedural and substantive
> [eminent domain] protections of chapters 73 and 74.

563 So. 2d at 625.  *Joint Ventures* characterizes the purpose and effect of the statute as

"freezing" property and compares the "freezing" to Florida's "consistently

prohibited" and deliberate depressing of land value in anticipation of eminent

domain.  563 So. 2d at 626 (citing cases).  *Joint Ventures* holds that each map of

reservation violates due process, and *Joint Ventures* "effectively eliminat[es] the

development restrictions created by the maps."  *Tampa-Hillsborough County Expressway*

*Authority v. A.G.W.S. Corp.*, 640 So. 2d 54 (1994) (confirming *Joint Ventures'* due

process holding and concluding that each landowner with property inside the

boundary of an invalidated map of reservation must prove *ad hoc* that the map

effected an inverse condemnation).

On a certified question from the district court of appeal, *Palm Beach County v.*

*Wright*, 641 So. 2d 50 (Fla. 1994), considers the "facial" propriety of a county

thoroughfare map both designating corridors for future roadway and forbidding land use that would impede future construction of the road. Palm Beach County's Comprehensive Plan forbade "land use activity . . . within any roadway designated on the thoroughfare map that would impede future construction of the roadway." 641 So. 2d at 51. The plaintiffs argued that, by forbidding land use within the corridor, Palm Beach County's thoroughfare map operates identically to the map in *Joint Ventures*. Palm Beach County responded by arguing that, unlike the map of reservation in *Joint Ventures*, Palm Beach County's map "is an unrecorded long-range planning tool tied to a comprehensive plan that outlines general roadway corridors and does not on its face delineate the exact routes of future roadways." 641 So. 2d at 52.

*Wright* equates the map with a set-back requirement, a valid exercise of the police power accomplished without providing just compensation. *Wright* finds (1) that the map is not recorded, like the maps of reservation in *Joint Ventures*, (2) that the road locations shown on the map are subject to change, and (3) that, unlike the FDOT in *Joint Ventures*, Palm Beach County "is a permitting authority which has the flexibility to ameliorate some of the hardships." 641 So. 2d at 53. *Wright* emphasizes that the map in *Joint Ventures* served the sole purpose of "freez[ing] property so as to depress land values in anticipation of eminent domain proceedings" and, by contrast,

the Palm Beach map "serves as an invaluable tool for planning purposes." *Wright*, 641 So. 2d at 53-54.

In *Joint Ventures* and *Wright*, the property remains the landowner's.  In *Joint Ventures* and *Wright*, the challenged provisions halt development on property targeted for prospective condemnation.  In *Joint Ventures* and *Wright*, the government acquires the property through eminent domain if the government needs the property and if the parties or a jury determines just compensation.  But in *Joint Ventures*, the legislature imposed the moratorium and recorded the encumbrance on the property in order to depress the value in anticipation of eminent domain.  By intentionally depressing the land value, the government impermissibly used the police power to impair the constitutional right to "just compensation."

Pasco County's misuse of the police power in the Ordinance exceeds the misuse in *Wright* and even the misuse in *Joint Ventures*.  Rather than imposing a mere development moratorium, the Ordinance requires the corridor's immediate conveyance at no cost.  Rather than unconstitutionally depressing land value in anticipation of eminent domain, the Pasco County Ordinance avoids eminent domain altogether and diverts any rebellious landowner to an in-house review in which the landowner bears the burden of proof.

Pasco County leverages permit approval not only to build a low-cost (or no cost), comfortable, and bulging land bank but to accumulate land that may never be used.  Nothing in the Ordinance requires Pasco County to build a road on the

confiscated property, nothing in the Ordinance prevents Pasco County's use of the confiscated property for some other purpose, and nothing in the Ordinance requires Pasco County to return to the landowner any unused property. If the present corridor plans collapse or change, Pasco County might sell Hillcrest's property (in which case Pasco County undoubtedly would demand from the buyer at least "just compensation").

Each of the Ordinance's several purported objectives – including "to coordinate the full development of roads," "to promote orderly growth," "to maintain the integrity of the corridor for transportation," to ensure "an adequate transportation network," and "to aid in the harmonious, orderly, and beneficial development of the county" – is a bona fide, legitimate governmental objective.[15] But the legitimate aims of government are readily and properly subject to accomplishment within the present constitutional and statutory arrangement, detailed in Chapters 73 and 74, Florida Statutes, and in the thoroughfare maps such as those in *Wright*, as well as set-back

_____

[15] Pasco County lifts each objective directly from the enabling statute:

> "Transportation corridor management" means the coordination of the planning of designated future transportation corridors with land use planning within and adjacent to the corridor to promote orderly growth, to meet the concurrency requirements of this chapter, and to maintain the integrity of the corridor for transportation purposes.

Fla. Stat. § 163.3164(47).

lines and reasonable permit restrictions.[16]  Pasco County's wielding the police power

to avoid eminent domain stands athwart established principles of due process.

### 2.1.6.  Pasco County Wields the Police Power to Obtain a Bulk Discount

An inverse condemnation remedy exists for each landowner subjected to the

Ordinance.  But a "property owner who must resort to inverse condemnation is not

on equal footing with an owner whose land is 'taken' through formal condemnation

proceedings."  *Joint Ventures*, 563 So. 2d at 627; *accord United States v. Clarke*, 445 U.S.

253, 255-59 (1980) (Rehnquist, J.) (highlighting procedural and economic distinctions

between a condemnation and an inverse condemnation).  Without invalidation of the

Ordinance as an impermissible use of the police power, each landowner defying the

Ordinance must proceed in inverse condemnation, without the procedural protection

of condemnation, without the appointment of an appraiser, without the submission

of testimony, without the right to attorneys' fees, and without the government's

depositing in the court registry twice the property's appraised value.  *Joint Ventures*,

563 So. 2d at 627 (citing *State Road Department v. Forehand*, 56 So. 2d 901 (Fla. 1952));

*see also Clarke*, 445 U.S. at 255-59.

So long as the Ordinance persists, Pasco County methodically undercuts

constitutional "just compensation" and realizes a steep discount below "just

---

[16] Pasco County has never said why an immediate public "dead zone" (as opposed to a future, private "dead zone") is required to ensure "an adequate transportation network," when and if Pasco County one day expands the road.

compensation" in the cost of acquiring right-of-way for a transportation corridor. Pasco County's method is plain.  If a landowner never aspires to develop land adjoining a transportation corridor, Pasco County pays just compensation through eminent domain instituted when the land is needed.  But, to landowners who aspire to develop land adjoining a corridor and who submit to the Ordinance – those who yield to the Ordinance's demand for a dedication of land for free – Pasco County pays nothing.  The Pasco County Attorney reports reliably and publicly that for Pasco County's right-of-way acquisition after enactment of the Ordinance the aggregate discount below just compensation is already measurable in millions of dollars – millions of dollars below constitutionally guaranteed just compensation.[17]

---

[17] Pasco County unpersuasively argues that the waiver and variance procedures save the Ordinance from a facial challenge because in some conceivable application – for example, if Pasco County grants a waiver or variance – the Ordinance can apply constitutionally.  But as explained above, neither the waiver nor the variance rectifies the aggregate discount achieved by the Ordinance, neither the waiver nor the variance properly places the burden on Pasco County, and neither the waiver nor the variance contains a cognizable and enforceable standard that removes the decision from the caprice of Pasco County.

Dolan recognizes that "roughly proportional" suggests an amorphous, imprecise standard.  512 U.S. at 391 ("No precise mathematical calculation is required.").  Therefore, Dolan places the burden on the government to establish "rough proportionality" to an impartial jury or judge.  Instead, the waiver procedure requires the landowner to establish the absence of "rough proportionality" and to prove the absence to the partial and land-starved County.

Requiring the landowner's establishing that the "variance requested is the minimum necessary to alleviate or address" one of the enumerated criteria quoted above, the variance procedure permits the Review Committee nearly unlimited discretion to grant or deny a variance.  The Ordinance nowhere requires the Review Committee to modify the variance but instead requires denial if the Review Committee can perceive a hypothetical variance less burdensome on Pasco County.  The "minimum necessary" standard leaves the variance decision, like the waiver decision, to the whim of the Review Committee.

In sum, the Ordinance discriminates based on economic aspiration.  Against the class of landowners who never attempt to develop, Pasco County will acquire land by eminent domain, beginning when and if Pasco County needs the land.  A landowner without need of a permit enjoys the protection of condemnation and receives the "just compensation" guaranteed by the Constitution.  A landowner who aspires to develop property and who aspires to a permit for a grocery store, a doctor's office, an apartment building, or the like faces an immediate confiscation of land.  For these landowners, a last but forlorn hope for just compensation is in Pasco County's prolix, opaque, and overbearing Ordinance.  Further, these landowners' just compensation is an elusive contingency, held for ransom by a committee methodically acquiring property at a steep, aggregate discount.  "[M]erely an attempt to circumvent the constitutional and statutory protections afforded private property ownership under the principles of eminent domain," *Joint Ventures*, 563 So. 2d at 625, the Ordinance improperly uses the police power and fails to advance a legitimate governmental purpose (taking by eminent domain is a legitimate governmental purpose; extorting landowners is not).

## 2.2.  A Rational Classification[18]

Because neither the complaint nor the papers include allegations or facts that Hillcrest was treated differently owing to membership in a suspect class or owing to

---

[18] Count III (as-applied equal protection claim under the U.S. Constitution); Count VIII (facial equal protection claim under the U.S. Constitution).

exercise of a fundamental right, rational basis review applies.  Under the highly deferential standard, "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trustees the of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).  Thus, a classification fails rational basis review only if "the facts preclude[] any plausible inference" that a legitimate basis underlies the difference in treatment. *Nordlinger v. Hahn*, 505 U.S. 1, 16 (1992).

Hillcrest accuses the Ordinance of arbitrarily treating differently a landowner whose property is overlapped by a corridor from a landowner whose property is not overlapped by a corridor.  According to the complaint, the discrimination is irrational because "development of [the latter] properties may contribute equally or more to the traffic problems necessitating the widening of the roads [as the development of the former properties]."  (Doc. 36, ¶ 111)  But a development along State Road 52 causes more traffic congestion on State Road 52 than an identically sized development not along State Road 52.[19]  Hillcrest identifies no equal protection violation.

## 2.3.  A Few Perfunctory Objections[20]

The magistrate judge recommends denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on the federal

---

[19] Although advancing other arguments, Hillcrest alleges in the complaint no other discriminatory classification.  Pasco County properly and successfully objects.  (Doc. 116 at 8)  Even absent an objection, the other equal protection arguments would fail.

[20] Count XV (facial "access to courts" claim under the U.S. Constitution); Count XVI (facial "right to a jury trial" claim under the U.S. Constitution).

"access to courts" claim.  Hillcrest objects; cites a footnote in *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); and argues that the Ordinance impairs the "right of access to courts . . . guaranteed under the United States Constitution by an amalgam of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause and the Fourteenth Amendment Equal Protection and Due Process Clauses."  (Doc. 112 at 35)  Whatever the merits of the "amalgam" in the usual instance (or under state law), such as a prison-litigation action, *Bounds v. Smith*, 430 U.S. 817 (1977), or an action challenging a filing fee, *Boddie v. Connecticut*, 401 U.S. 371 (1971), Hillcrest fails to articulate an impediment created by the Ordinance that frustrates Hillcrest's access to federal court.

Next, the magistrate judge recommends denying Hillcrest's motion for summary judgment and granting Pasco County's motion for summary judgment on the claim that the Ordinance violates Hillcrest's right to a jury trial.  Hillcrest asserts that the Ordinance violates the federal right to a jury trial by "effectively suspend[ing] the right to jury trial in federal court for as long as it takes to complete the dedication waiver process."  (Doc. 112 at 38)  Again failing to articulate the merits of the claim to a level susceptible of understanding (most administrative procedures "effectively suspend" a jury trial), Hillcrest relies on *Armster v. U.S. Dist. Ct. for the C.D. Cal.*, 792 F.2d 1423 (9th Cir. 1986), a decision addressing the Central District of California's suspending all civil jury-trials for three-and-a-half months.  *Armster* is unhelpful.

### 2.4. Other Claims for Relief [21]

Section 1367(c) of Title 28 of the United States Code grants the district court discretion to decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of state law . . . [or] (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *See Utopia Provider Sys. v. Pro-Med Clinical Sys.*, 596 F.3d 1313, 1328-29 (11th Cir. 2010); *Parker v. Scrap Metal Processors,* 468 F.3d 733, 742-44 (11th Cir. 2006).   The remaining claims include (1) in Count I an as-applied "takings" claim under the Florida Constitution, (2) in Count IV an as-applied due process claim under the Florida Constitution, (3) in Count V an as-applied equal protection claim under the Florida Constitution, (4) in Count VI an as-applied "temporary takings" claim under the Florida Constitution, (5) in Count IX a facial due process claim under the Florida Constitution, (6) in Count X a facial equal protection claim under the Florida Constitution, (7) in Count XII a facial "access to courts" claim under the Florida Constitution, (8) in Count XIII a facial "separation of powers" claim under the Florida Constitution, and (9) in Count XIV a facial "right to a jury trial" claim under the Florida Constitution.   Resolution of the

---

[21] Count I (as-applied "taking" claim under the Florida Constitution); Count IV (as-applied due process claim under the Florida Constitution); Count V (as-applied equal protection claim under the Florida Constitution); Count VI (as-applied "temporary taking" claim under the Florida Constitution); Count IX (facial due process claim under the Florida Constitution); Count X (facial equal protection claim under the Florida Constitution); Count XII (facial "access to courts" claim under the Florida Constitution); Count XIII (facial "separation of powers" claim under the Florida Constitution); Count XIV (facial "right to a jury trial" claim under the Florida Constitution).

remaining claims would require a federal court's uncomfortable and unnecessary examination of the Florida Constitution and the structure of Florida's government. Additionally, on August 22, 2011, Hillcrest sued the FDOT in state court for inverse condemnation. *Hillcrest Property v. Florida*, 51-2011-A-003825 (staying action in favor of this action on December 14, 2012). With Hillcrest's property disputed in each action, the jurisdictional splitting of claims invites a duplication of judicial effort, an affront to comity, and an inconsistent result.

### 3. Conclusion

Pasco County has enacted an ordinance that effects what, in more plain-spoken times, an informed observer would call a "land grab," the manifest purpose of which is to evade the constitutional requirement for "just compensation," that is, to grab land for free. Viewed more microscopically, Pasco County's Ordinance designs to accost a citizen as the citizen approaches the government to apply for a development permit, designs to withhold from a citizen the development permit unless the citizen yields to an extortionate demand to relinquish the constitutional right of "just compensation," and designs first and foremost to accumulate – for free – land for which a citizen would otherwise receive just compensation.

Aware undoubtedly of the brazenness of the Ordinance, Pasco County has garnished the Ordinance, has disguised the Ordinance, has planted in the Ordinance a distraction, using the familiar phrase "roughly proportional" or "rough

proportionality," words intended to evoke the soothing reassurance of the Supreme Court's decision in *Dolan,* words intended to deploy aggressively the foggy notion that if the words "roughly proportional" appear in a scheme to regulate land, the scheme is constitutional.  Not so.

The parties laboriously briefed in this action an array of theories.  Both the magistrate judge and I have examined, exhaustively and exhaustingly, the contending theories, briefed and unbriefed.  The magistrate judge has opined formidably.  Accepting the magistrate judge's report for the most part but viewing the law in part from a slightly different vantage, I contribute some additional analysis and accept the magistrate judge's conclusion.  Another judge might find the magistrate judge's opinion or this opinion inexact in this or that particular of constitutional law.  Nonetheless, this Ordinance is an unmistakable, abusive, and coercive misapplication of governmental power, perpetrated to cynically evade the Constitution.  The Ordinance cannot stand, whether for the precise reasons stated here or for a related reason.

The report and recommendation (Doc. 168) is **ADOPTED IN PART**.  To the extent inconsistent with this order, the parties' objections (Docs. 170 and 171) are **OVERRULED**.  Under 28 U.S.C. § 1367(c)(1) and (4), supplemental jurisdiction is **DECLINED** over Counts I, IV, V, VI, IX, X, XII, XIII, and XIV.  Section 1367(d) tolls any applicable limitation for thirty days.  *Jinks v. Richland County*, 538 U.S. 456,

459 (2003).  Pasco County's motion for summary judgment (Doc. 111) and

Hillcrest's motion for summary judgment (Doc. 112) are **GRANTED IN PART**

**AND DENIED IN PART** as follows:

- Count II (due process; as-applied; United States Constitution):
  Pasco County's motion for summary judgment is **DENIED**.

- Count III (equal protection; as-applied; United States
  Constitution): Pasco County's motion for summary judgment is
  **GRANTED**.

- Count VII (due process; facial; United States Constitution):
  Hillcrest's motion for summary judgment is **GRANTED**. Pasco
  County's motion for summary judgment is **DENIED**.

- Count VIII (equal protection; facial; United States Constitution):
  Hillcrest's motion for summary judgment is **DENIED**.  Pasco
  County's motion for summary judgment is **GRANTED**.

- Count XV (access to courts; facial; United States Constitution):
  Hillcrest's motion for summary judgment is **DENIED**.  Pasco
  County's motion for summary judgment is **GRANTED**.

- Count XVI (right to a jury trial; facial; United States Constitution):
  Hillcrest's motion for summary judgment is **DENIED**.  Pasco
  County's motion for summary judgment is **GRANTED**.

To discuss the form of the forthcoming judgment and to discuss other current issues,

a hearing and a status conference will occur on **APRIL 25, 2013, at 2 p.m.**, in

Courtroom 15A of the United States Courthouse in Tampa, Florida.

ORDERED in Tampa, Florida, on April 12, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE